Harry LEWIS and Sylvia Baker, Plaintiffs-Appellants,

v.

William H. ANDERSON, S. Clark Beise, Shirley T. Black, Roy E. Disney, Ronald W. Miller, Richard T. Morrow, Donn B. Tatum, E. Cardon Walker, Raymond L. Watson, Walt Disney Productions, George L. Bagnall and Gordon E. Youngman, Defendants-Appellees.

No. 79–3021.

United States Court of Appeals, Ninth Circuit.

Oct. 29, 1979.

Rehearing Denied April 8, 1980.

---

Sidney L. Garwin, New York City, for plaintiffs-appellants.

Seth M. Hufstedler, Los Angeles, Cal., for defendants-appellees.

Before WRIGHT and GOODWIN, Circuit Judges, and SOLOMON, Senior District Judge.*

EUGENE A. WRIGHT, Circuit Judge:

Two minority shareholders of Walt Disney Productions appeal from partial summary judgment barring their derivative action against certain directors. The district court ruled that the board may appoint a "special litigation committee" to determine whether maintaining the action is in the corporation's best interests. So long as the committee exercises its best business judgment, its decision to dismiss the action will be honored by the courts. The court re-

served for trial the question whether the committee did exercise good faith business judgment. We granted review under 28 U.S.C. § 1292(b) and Rule 5 of the Federal Rules of Appellate Procedure.

FACTS

The essential facts are not in dispute. In 1973, Walt Disney Productions (Disney) adopted a stock option plan for key employees. In November, 1974, the board-appointed "stock option committee" granted new options, allegedly more favorable to defendant directors. Appellants contend that the issuance of the new options, and management's behavior in seeking shareholder approval of the new option plan, violated federal securities laws.

This court need not decide the validity of any of these contentions, for the only issue before us is whether the special litigation committee appointed by the directors had authority to dismiss the action.

When appellants filed this action in February, 1976, Disney's board of directors delegated to a "special litigation committee" the authority to decide whether the action should be maintained. The committee consisted of two outside directors, appointed to the board after the challenged transactions, and one director who is a named defendant, but who did not benefit from the challenged transactions.

The committee met nine times, and retained independent legal counsel. It decided that it would not be in Disney's best interests to pursue the litigation. The committee's counsel moved for summary judgment on the issue of its authority to dismiss the action. The trial court granted the motion, holding that if the committee exercised its business judgment in deciding to terminate the action, that decision could not be challenged derivatively, but reserved for a court trial the factual determination of whether the committee actually made a good faith determination. We limit our review to the legal question whether a good faith determination by the committee bars any further action by a shareholder on behalf of the corporation.

* Of the District of Oregon.

## DISCUSSION

In answering the question, we are aided, as the district court was not, by the recent decision in *Burks v. Lasker,* 441 U.S. 471, 99 S.Ct. 1831, 60 L.Ed.2d 404 (1979). It gives added weight to the decision below.

■ In *Burks* the Court held that whether a special committee of disinterested directors may dismiss a derivative action brought against other board members, depends on the relevant state law. In that case, the derivative action charged the directors with violations of the Investment Company and Investment Advisers Acts. As in the present case, members of the board who were not involved in the alleged violations comprised a "special litigation committee" and independently decided that the action was not in the corporation's best interests.

The Supreme Court held that the role of the federal court in such a case is limited to two inquiries: whether the relevant state law allows the board to delegate power to dismiss the action to a special litigation committee, and whether such state laws are consistent with relevant federal law.

In light of *Burks,* we must determine (1) whether California law requires the dismissal of an action once a duly delegated committee determines that the action is not in the corporation's best interests, and (2) whether such a rule is consistent with the Securities Exchange Act of 1934. We answer both questions in the affirmative.

## THE APPLICABLE LAW

Because Disney is a California corporation, California law controls. Our search for the applicable state law follows the guidelines established by the Supreme Court:

> [T]he State's highest court is the best authority on its own law. If there be no decision by that court then federal authorities must apply what they find to be the state law after giving "proper regard" to relevant rulings of other courts of the State. In this respect, it may be said to be, in effect, sitting as a state court.

*Commissioner of Internal Revenue v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1783, 18 L.Ed.2d 886 (1967), quoting *Bernhardt v. Polygraphic Co.,* 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956).

■ We accord "substantial deference" to the district judge's interpretation of the law of the state in which he sits. *United States v. Valley National Bank,* 524 F.2d 199, 201 (9th Cir. 1975).

■ The California Supreme Court has never faced the issue presented here; we therefore "sit as a state court" and look for guidance from intermediate appellate courts in California, and from courts in other jurisdictions which have recently considered the question.

## THE BUSINESS JUDGMENT RULE

■ California law has long recognized the "business judgment rule," holding that directors' decisions in the day to day management of the corporation may not be attacked by shareholders so long as the directors exercised their best "business judgment" in making those decisions. This rule applies to the courts as well:

> Neither the court nor minority shareholders can substitute their judgment for that of the corporation "where its board has acted in good faith and used its best business judgment in behalf of the corporation."

*Marsili v. Pacific Gas and Electric Company,* 51 Cal.App.3d 313, 324, 124 Cal.Rptr. 313, 320 (1975), citing *Olson v. Basin Oil Co.,* 136 Cal.App.2d 543, 559–60, 288 P.2d 952, 960 (1955).

■ The business judgment rule applies to all discretionary decisions by the board, including the decision not to pursue a cause of action:

> Where a board of directors, in refusing to commence an action to redress an alleged wrong against a corporation, acts in good faith within the scope of its discretionary power and reasonably believes its refusal to commence the action is good business judgment in the best interest of the corporation, a stockholder is not authorized

to interfere with such discretion by commencing the action.

*Findley v. Garrett,* 109 Cal.App.2d 166, 174, 240 P.2d 421, 426 (1952).

The same rule was stated by Justice Brandeis:

> Whether or not a corporation shall seek to enforce in the courts a cause of action for damages is, like other business questions, ordinarily a matter of internal management and is left to the discretion of the directors, in the absence of instruction by vote of the stockholders. Courts interfere seldom to control such discretion *intra vires* the corporation, except where the directors are guilty of misconduct equivalent to a breach of trust, or where they stand in a dual relation which prevents an unprejudiced exercise of judgment; . . .

*United Copper Securities Co. v. Amalgamated Copper Co.,* 244 U.S. 261, 263–4, 37 S.Ct. 509, 510, 61 L.Ed. 1119 (1917).

Appellants claim this rule does not apply when a majority of the board is charged with wrongdoing in the very action sought to be dismissed. The application of the rule to such a case would be improper. But here, the directors who are accused of wrongdoing have not decided to dismiss the case. They have appointed a committee of disinterested directors to make an independent determination of the merits of the action. Several recent cases have extended the business judgment rule to such situations.

*Abbey v. Control Data Corp.,* 603 F.2d 724 (8th Cir. 1979), is the first federal case to decide the issue since *Burks v. Lasker, supra,* was decided. Following the two-step approach mandated by *Burks,* the Eighth Circuit held that under Delaware law the business judgment rule extends to the decision of a special litigation committee to dismiss a derivative action against board members. The court also held that this interpretation of Delaware law is consistent with federal securities laws.

■ *Abbey* is particularly helpful here, not only because it is the first post-*Burks* decision by a federal court of appeals, but also because the Delaware statute construed is almost identical to the California statute.[1] Each authorizes a corporate board of directors to appoint committees to act for the board. We agree with the Eighth Circuit that the business judgment rule

> applies to any reasonable, good faith determination by an autonomous board of directors that the action is not in the best interests of the corporation.

603 F.2d p. 727.

We also draw guidance from a recent decision by New York's Court of Appeals. In *Auerbach v. Bennett,* 47 N.Y.2d 619, 419 N.Y.S.2d 920, 393 N.E.2d 994 (1979), that court held:

> [T]he substantive aspects of a decision to terminate a shareholders' derivative action against defendant corporate directors made by a committee of disinterested directors appointed by the corporation's board of directors are beyond judi-

1. Each statute permits a corporate board to appoint a committee to act for the board. The Delaware code provides:

> (c) The board of directors may, by resolution passed by a majority of the whole board, designate 1 or more committees, each committee to consist of 1 or more of the directors of the corporation. The board may designate 1 or more directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of the committee. . . . Any such committee, to the extent provided in the resolution of the board of directors, or in the bylaws of the corporation, shall have and may exercise all the powers and authority of the board of directors in the management of the business

and affairs of the corporation, and may . . . .

8 Del.C. § 141(c).

The analogous California statute reads, in relevant part:

> The Board may, by resolution adopted by a majority of the authorized number of directors, designate one or more committees, each consisting of two or more directors, to serve at the pleasure of the board. . . . Any such committee, to the extent provided in the resolution of the board or in the bylaws, shall have all the authority of the board, except with respect to [seven exceptions not relevant here] . . . .

Cal.Corp.Code § 311 (West 1977).

cial inquiry under the business judgment doctrine, . . . 47 N.Y.2d at 623, 419 N.Y.S.2d at 922, 393 N.E.2d at 996. The court appropriately noted that the fact that the independent committee members were appointed by interested directors is an "inescapable" aspect of "the corporation's predicament." Although the situation presents problems, there is no alternative:

> To assign responsibility of the dimension here involved to individuals wholly separate and apart from the board of directors would, except in the most extraordinary circumstances, itself be an act of default and breach of the nondelegable fiduciary duty owed by the members of the board to the corporation and to its shareholders, employees and creditors. For the courts to preside over such determinations would similarly work an ouster of the board's fundamental responsibility and authority for corporate management.

47 N.Y.2d at 633, 419 N.Y.S.2d at 928, 393 N.E.2d at 1002.

■ We agree. *Auerbach* and *Abbey* reflect a clear trend in corporate law, and we are confident that a California court would follow this trend. As the *Auerbach* court recognized, a court may "inquire as to the disinterested independence of the members of that [special litigation] committee and as to the appropriateness and sufficiency of the investigative procedures chosen and pursued by the committee." 47 N.Y.2d at 623–624, 419 N.Y.S.2d at 922, 393 N.E.2d at 996. At trial the district court will make that inquiry. Our decision here, like that in *Auerbach*, is that the good faith exercise of business judgment by a special litigation committee of disinterested directors is immune to attack by shareholders or the courts.

Our decision is supported not only by case law but by sound policy considerations. To allow one shareholder to incapacitate an entire board of directors merely by leveling charges against them gives too much leverage to dissident shareholders. There is no reason to believe that a minority shareholder is more likely to act in the best interest of the corporation than are directors who are elected by a majority of the stockholders.

## FEDERAL SECURITIES LAWS

■ As noted above, the Supreme Court's decision in *Burks* requires us to decide if our interpretation of California law conflicts with the underlying policies of the federal securities laws. We hold that it does not.

As a starting point we note that in *Burks* the Court held that an interpretation of state law allowing disinterested directors to dismiss a derivative suit brought under the Investment Company and Investment Advisors Acts would not be inconsistent with the Acts. We note further that the Eighth Circuit has found that such an interpretation of state law does not conflict with the underlying policy of §§ 13(a) and 14(a) of the Securities Exchange Act, the Act we examine here.[2]

As we have seen, "the overriding purpose of Section 10(b) and Rule 10b–5 was to protect the purity of the securities market and . . . private claims for relief thereunder are a means to that end." *Rochelle v. Marine Midland Grace Trust Co. of N.Y.*, 535 F.2d 523, 532–33 (9th Cir. 1976). We see no threat to the purity of the securities market from our interpretation of California law.

■ The business judgment rule, as we interpret it, would not bar a derivative action when a special litigation committee of disinterested directors dismisses an action in bad faith. It operates only to insulate the committee's good faith decision to dismiss an action, even if that decision is

---

**2.** The foundation of the § 10(b) claim here is that the directors had inside information that in November, 1974 the price of Disney stock was low, and that options granted to buy at that price would be profitable. Disney stock did in fact go up and the directors profited from their options. The foundation of the § 14(a) claim is that the proxy statements sent to shareholders in January, 1975, and December, 1975 did not fully disclose the alleged violations of federal law by defendant directors in enacting the 1974 stock option plan.

784

negligent. In that sense the business judgment rule is closely analogous to Rule 10b–5 itself, which affords no cause of action for negligence. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). As one post-*Ernst* Circuit court has said:

> Section 10(b) and Rule 10b–5 were not intended to bring within their ambit simple corporate mismanagement or every imaginable breach of fiduciary duty in connection with a securities transaction.

*St. Louis Union Trust Co. v. Merrill Lynch, etc.*, 562 F.2d 1040, 1048 (8th Cir. 1977). That description of Rule 10b–5 is an equally apt description of the business judgment rule. We find, in sum, that the two rules can coexist harmoniously.

The same reasoning holds true for the disclosure requirements of § 14(a), which are designed to "prevent management or others from obtaining authorization for corporate action by means of deceptive or inadequate disclosure in proxy solicitations." *J. I. Case Co. v. Borak*, 377 U.S. 426, 431, 84 S.Ct. 1555, 1559, 12 L.Ed.2d 423 (1964).

Allowing disinterested directors to exercise their business judgment to dismiss what they see as groundless causes of action would in no way weaken the regulatory provisions of the federal securities laws. So long as those accused of manipulating the proxy vote are excluded from deciding whether or not to pursue the claim there is no conflict between the business judgment rule and § 14(a).

Appellants contend also that the court below erred in dismissing the complaint without notice to the shareholders. The argument is frivolous in that this is not a voluntary dismissal. Moreover, the case has not been dismissed. The court granted only *partial* summary judgment.

Appellants' contention that the court's action denies them due process is equally frivolous. Their action is brought on the corporation's behalf, not their own, and they have no compensable property right at stake.

Finally, appellants contend that the court erred in denying their motion for a jury trial. We agree with the court below that application of the business judgment doctrine is essentially a "standing" issue: if the doctrine is applicable, then plaintiffs have no standing to sue. Therefore the district court properly held that no jury trial was required to determine this purely equitable question. See *Ross v. Bernhard*, 396 U.S. 531, 538, 90 S.Ct. 733, 738, 24 L.Ed.2d 729 (1970), where the Court noted that "the stockholder's right to sue on behalf of the corporation [is] historically an equitable matter," and triable by the court without a jury.

Because the court below correctly determined that the business judgment doctrine applies to that instant case, we affirm.

AFFIRMED.