**William MALDONADO, Plaintiff,**

v.

**William H. FLYNN, Sam Israel, Jr., A. G. Gueymard, J. B. Harrison, Ronald C. Lassiter, B. J. Mackin, Michael R. Naess, Eugene F. Shiels, Robert B. Wall and Zapata Corporation, Defendants.**

No. 77 Civ. 3180.

United States District Court,
S. D. New York.

Jan. 24, 1980.

Garwin & Bronzaft, New York City, for plaintiff; Sidney L. Garwin, New York City, of counsel.

George A. Burrell, P.C., New York City, for defendant Zapata Corp.

Rogers & Wells, New York City, for individual defendants.

OPINION

EDWARD WEINFELD, District Judge.

This is a stockholder's derivative suit on behalf of Zapata Corporation ("Zapata"), a Delaware corporation, against nine of its past and present directors. Initially, claims were asserted under sections 10(b), 14(a) and 7 of the Securities Exchange Act (the "1934 Act") and the rules thereunder, and under the common law. All were based upon a modification in 1974 of Zapata's stock option plan by its board of directors. This Court dismissed the complaint for failure to state a cause of action.[1] The Court of Appeals affirmed except as to plaintiff's claim that the proxy materials used to secure the election of directors in 1975, 1976 and 1977 were false and misleading in not disclosing the circumstances surrounding the plan's modification. This was held to state a claim under section 14(a) and the case was remanded for further proceedings.[2]

Plaintiff subsequently filed an amended complaint, again reciting the circumstances of the plan's modification but alleging only a single cause of action for the violations of section 14(a) pleaded in the original complaint with respect to the 1975 through 1977 elections, and in addition for similar violations in proxy statements issued by Zapata in late 1977 and in 1978 for the election of directors. The amended complaint seeks to nullify the elections of directors from 1975–1979; an injunction against further misleading proxy statements; and to recover from the defendants on behalf of Zapata damages allegedly flowing from the issuance of the claimed deceptive proxy materials.

Zapata moves to dismiss the amended complaint pursuant to Rule 12(b)(6) or alternatively for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Its motion is based upon a business judgment determination by the Inde-

1. *Maldonado v. Flynn*, 448 F.Supp. 1032 (S.D. N.Y.1978).

2. *Maldonado v. Flynn*, 597 F.2d 789, 798 (2d Cir. 1979).

pendent Investigation Committee of Zapata Corporation (the "Committee") that continuation of this action is contrary to the best interests of the corporation on whose behalf it was brought and that it therefore should not be pursued further.

The Committee, with a membership of two disinterested directors, was created by a resolution of Zapata's board of directors dated June 25, 1979.[3] They are not defendants in this action; they were designated long after it had been commenced; they had no involvement in matters that are the subject of the action. The Committee was charged with reviewing several derivative actions then pending against certain of the corporation's directors. In its "Report and Determination" dated September 21, 1979, the Committee reported on its investigation of three lawsuits—this one included[4]—and its conclusion, inter alia, that this action was not in Zapata's best interests. It directed the corporation's counsel to move to dismiss the action.

Plaintiff, in opposing the motion, urges that the "business judgment rule" of Delaware is inconsistent with section 14(a) of the Securities Act of 1934 and cannot be used to foreclose prosecution of his claim thereunder. Thus at issue is the applicability of the business judgment rule to a pending derivative action alleging a section 14(a) violation, when a specially appointed committee of disinterested directors, after a thorough investigation, recommends dismissal of the action as not in the best interests of the corporation. Guidance to the answer is given by the Supreme Court in the recently decided case of *Burks v. Lasker* (hereafter *"Burks"*).[5] Addressing this very question with respect to a suit under the Investment Company Act[6] and the Investment Advisers Act,[7] *Burks* held that a two-step inquiry was required: As a threshold question, does applicable state law permit independent directors to terminate a derivative action against other board members? And, if so, is such a state law rule consistent with the policies of the federal laws upon which the action is based?[8]

■ While the Delaware courts[9] have yet to address the precise issue of whether Delaware corporation law permits a derivative action against some of a corporation's directors to be terminated by disinterested, independent directors empowered to act for the corporation, the Court of Appeals for the Eighth Circuit, in *Abbey v. Control Data Corp.*[10] (hereafter *"Abbey"*), proceeding through the same two-step analysis undertaken here, examined relevant Delaware law and concluded that it did. This Court agrees with that conclusion.

■ As the *Abbey* opinion notes, it is Delaware's law that business decisions by a disinterested board of directors are insulat-

---

**3.** Section 141(c) of Delaware's General Corporation Law empowers the board of directors to create committees and provides that such a committee may exercise "all the powers and authority of the board of directors in the management of the business and affairs of the corporation." *See also* Art. III, § 9 of the By-laws of Zapata Corporation.

**4.** In addition to this action, two others are pending in other courts. One was brought by the plaintiff herein in the Delaware state court and another by other stockholders in the Southern District of Texas. The latter two actions encompass, in addition to the claim that parallels that set forth in this suit, other claims.

**5.** 441 U.S. 471, 99 S.Ct. 1831, 60 L.Ed.2d 404 (1979).

**6.** 15 U.S.C. § 80a–1 et seq.

**7.** 15 U.S.C. § 80b–1 et seq.

**8.** 441 U.S. at 480, 99 S.Ct. at 1838. *See also Lewis v. Anderson*, 615 F.2d 778, CCH Fed.Sec. L.Rep. ¶ 97,153 (9th Cir. Oct. 29, 1979); *Abbey v. Control Data Corp.*, 603 F.2d 724, 728 (8th Cir. 1979), *cert. denied*, —— U.S. ——, 100 S.Ct. 670, 62 L.Ed.2d 647 (1980).

**9.** Since Zapata is a Delaware corporation, Delaware provides the applicable state law. *See Beard v. Elster*, 39 Del.Ch. 153, 160 A.2d 731, 735 (1960); *Abbey v. Control Data Corp.*, 603 F.2d 724, 728–29 (8th Cir. 1979), *cert. denied*, —— U.S. ——, 100 S.Ct. 670, 62 L.Ed.2d 647 (1980).

**10.** 603 F.2d 724 (1979), *cert. denied*, —— U.S. ——, 100 S.Ct. 670, 62 L.Ed.2d 647 (1980). *See also Siegel v. Merrick*, 84 F.R.D. 106, 110 (S.D. N.Y. 1979).

ed from shareholder challenge and judicial scrutiny. Of this highly deferential "business judgment rule" Delaware's Supreme Court has written:[11]

> We think the fact that a disinterested Board of Directors reached this decision by the exercise of its business judgment is entitled to the utmost consideration by the courts in passing upon the results of that decision. Such has long been the law of this State.

> . . . . .

> [W]e are precluded from substituting our uninformed opinion for that of experienced business managers of a corporation who have no personal interest in the outcome and whose sole interest is the furtherance of the corporate enterprise.

Moreover, even where some board members are disqualified from participating in the board's decision, actions taken by independent, disinterested directors in the exercise of their independent business judgment will also be sustained.[12]

 The business judgment rule is applicable to decisions regarding litigation brought on the corporation's behalf. Again as noted by the Eighth Circuit, this application of the rule is a longstanding feature of corporate law.[13] It has found expression in federal jurisprudence in *United Copper Securities Co. v. Amalgamated Copper Co.*,[14] where, discussing the demand requirement in derivative suits, Justice Brandeis wrote:

> Whether or not a corporation shall seek to enforce in the courts a cause of action for damages is, like other business questions, ordinarily a matter of internal management and is left to the discretion of the directors, in the absence of instruction by vote of the stockholders. Courts interfere seldom to control such discretion, *intra vires* the corporation, except where the directors are guilty of misconduct equivalent to a breach of trust, or where they stand in a dual relation which prevents an unprejudiced exercise of judgment.

Consonant with this generally accepted view, Delaware's Supreme Court has held that the power to conduct a corporation's litigation is part of the undisputed power of the board to manage the corporation's business.[15] Thus under Delaware law a committee of disinterested directors, properly vested with the power of the board, may in the exercise of their business judgment require the termination of a derivative suit brought on the corporation's behalf even

---

**11.** *Beard v. Elster,* 39 Del.Ch. 153, 160 A.2d 731, 738–39 (1960) (citation omitted). *See also Sinclair Oil Corp. v. Levien,* 280 A.2d 717, 720 (Del.1971); *Gimbel v. Signal Companies, Inc.,* 316 A.2d 599, 608–09 (Del.Ch.), *aff'd,* 316 A.2d 619 (Del.1974); *Kaplan v. Goldsamt,* 380 A.2d 556, 568 (Del.Ch.1977) ("presumption of sound business judgment reposed in [board] will not be disturbed if any rational business purpose can be attributed to its decision.").

**12.** *Puma v. Marriott,* 283 A.2d 693, 695–96 (Del.Ch.1971). *Cf.* Del.Gen.Corp.Law § 144(a) (transactions between director and corporation not void solely for that reason if authorized by a majority of disinterested directors).

**13.** *Abbey v. Control Data Corp.,* 603 F.2d 724, 729 (8th Cir. 1979), *cert. denied,* —— U.S. ——, 100 S.Ct. 670, 62 L.Ed.2d 647 (1980). *See also Cramer v. General Tel. & Elec. Corp.,* 582 F.2d 259, 274–75 (3d Cir. 1978), *cert. denied,* 439 U.S. 1129, 99 S.Ct. 1048, 59 L.Ed.2d 90 (1979); *Rosengarten v. International Tel. & Tel. Corp.,* 466 F.Supp. 817, 822 (S.D.N.Y.1979); *Auerbach v. Bennett,* 47 N.Y.2d 619, 631, 419 N.Y.S.2d 920, 927, 393 N.E.2d 994, 1001 (1979); *Findlay v. Garrett,* 109 Cal.App.2d 166, 174, 240 P.2d 421, 426 (1952).

The business judgment rule in connection with litigation brought on the corporation's behalf is inextricably linked to the requirement found in many jurisdictions that a shareholder, before commencing a derivative action, first make a demand upon the board of directors to enforce the corporation's rights. *See Cramer, supra,* 582 F.2d at 274–75. *See also* Del.Rule of the Court of Chancery 23.1; Fed.R.Civ.P. 23.1.

**14.** 244 U.S. 261, 263–64, 37 S.Ct. 509, 510, 61 L.Ed. 1119 (1917).

**15.** *See Mayer v. Adams,* 37 Del.Ch. 298, 141 A.2d 458, 461 (1958). *See also Perrine v. Pennroad Corp.,* 29 Del.Ch. 531, 47 A.2d 479, 487 (1946), *cert. denied,* 329 U.S. 808, 67 S.Ct. 620, 91 L.Ed. 690 (1947) (applying business judgment rule to settlement of litigation); *McKee v. Rogers,* 18 Del.Ch. 81, 156 A. 191 (1931).

though other directors are disqualified from participating in such a decision because they are named as defendants in the suit.[16]

■ We turn to the second leg of the inquiry mandated by *Burks*, whether this rule is inconsistent with the policies underlying section 14(a) of the 1934 Act, the law upon which this action is based. The weight of existing authority supports a conclusion that there is no such inconsistency. Before the Supreme Court decided *Burks*, several lower federal courts had ordered the dismissal of derivative actions brought under section 14(a) upon the motion of independent directors, relying upon acceptance of the business judgment rule in earlier federal cases.[17] Had there been any clearly apparent inconsistency between this application of the rule and the policies of the federal statute, it is a reasonable assumption that some reference would have been made to it. In fact, in *Abbey v. Control Data Corp.*,[18] the District Court was urged to adopt a rule that public policy underlying the 1934 Act precluded application of the business judgment rule. The court rejected this position and noted that there was no authority to support it.

The *Burks* decision itself provides significant, affirmative support for a finding that the application of the business judgment rule does not contravene the purpose of the 1934 Act. Since the lower courts had not considered any state law, the Supreme Court was not in a position to decide whether any given state law rule about director termination of lawsuits was consistent with the Investment Company Act or the Investment Advisers Act; however, it took strong issue with the Second Circuit's view that *no rule*—state or federal—permitting independent directors to terminate an action would be consistent with the federal statutes.[19] The Court remarked:

> There may well be situations in which the independent directors could reasonably believe that the best interests of the shareholders call for a decision not to sue—as, for example, where the costs of litigation to the corporation outweigh any potential recovery. In such cases, it would *certainly be consistent* with the Act to allow the independent directors to terminate a suit, even though not frivolous.[20]

It went on to hold "that Congress did not require that States, or federal courts, abso-

---

**16.** This conclusion is further supported by recent decisions applying non-Delaware law. In *Lewis v. Anderson*, 615 F.2d 778, CCH Fed. Sec.L.Rep. ¶ 97,153 (Oct. 29, 1979), the Ninth Circuit held under California law that "the good faith exercise of business judgment by a special litigation committee of disinterested directors is immune to attack by shareholders or the courts" and expressed its belief that this rule represented a "clear trend in corporate law," at 96,367. *See also Auerbach v. Bennett*, 47 N.Y.2d 619, 419 N.Y.S.2d 920, 393 N.E.2d 994 (1979) (New York law). Several federal courts, prior to the decision in *Burks*, had made similar dispositions relying on general principles of corporate law expressed in earlier federal cases. *See Rosengarten v. International Tel. & Tel. Corp.*, 466 F.Supp. 817, 822–23 (S.D.N.Y. 1979); *Abbey v. Control Data Corp.*, 460 F.Supp. 1242 (D.Minn.1978), *aff'd*, 603 F.2d 724 (8th Cir. 1979), *cert. denied*, —— U.S. ——, 100 S.Ct. 670, 62 L.Ed.2d 647 (1980); *Gall v. Exxon Corp.*, 418 F.Supp. 508, 514–15 (S.D.N.Y.1976); *Galef v. Alexander*, 76 Civ. 2296 (S.D.N.Y.1979) (unpublished opinion) *rev'd*, 615 F.2d 51 (2d Cir.1980).

**17.** See cases cited in footnote 16, *supra*.

**18.** 460 F.Supp. 1242, 1245–46 (D.Minn.1978), *aff'd*, 603 F.2d 724 (8th Cir. 1979), *cert. denied*, —— U.S. ——, 100 S.Ct. 670, 62 L.Ed.2d 647 (1980).

**19.** Even the Second Circuit's opinion, *Lasker v. Burks*, 567 F.2d 1208 (2d Cir. 1978), expressly declared that its holding was narrowly based "on the unique nature of the investment company and its symbiotic relationship with its investment advisor." 567 F.2d at 1212 n. 14. *See also Abbey v. Control Data Corp.*, 460 F.Supp. 1242, 1245 (D.Minn.1978), *aff'd*, 603 F.2d 724 (8th Cir. 1979), *cert. denied*, —— U.S. ——, 100 S.Ct. 670, 62 L.Ed.2d 647 (1980).

**20.** 441 U.S. at 483, 99 S.Ct. at 1840–41 (emphasis added) (citations omitted). *Cf. United Copper Secs. Co. v. Amalgamated Copper Co.*, 244 U.S. 261, 264, 37 S.Ct. 509, 511, 61 L.Ed. 1119 (1917) ("The fact that the cause of action is based on the Sherman Law does not limit the discretion of the directors . . . nor does it give to individual shareholders the right to interfere with the internal management of the corporation.")

lutely forbid director termination of all nonfrivolous actions." [21]

Finally, the two Courts of Appeals which to date have actually applied the *Burks* analysis to suits alleging section 14(a) violations and have addressed the question of consistency each have found that a state law rule (in one instance the very Delaware rule at issue here) permitting an independent committee of directors to terminate a derivative action is consistent with section 14(a) and applicable to actions to redress its violation.[22] Thus, the Ninth Circuit concluded in *Lewis v. Anderson* : [23]

> Allowing disinterested directors to exercise their business judgment to dismiss what they see as groundless causes of action would in no way weaken the regulatory provisions of the federal securities laws. So long as those accused of manipulating the proxy vote are excluded from deciding whether or not to pursue the claim there is no conflict between the business judgment rule and § 14(a).

In spite of the contrary authority in these cases, plaintiff contends that the business judgment rule frustrates the policies underlying section 14(a). He reasons that that section's "strong regulatory" purpose is to protect investors by preventing management from obtaining authorization for corporate action by deceptive proxy materials; that to this end a private cause of action has been implied by the courts for violations of the section; and that to permit the very violators of the statute to control exercise of this right of action renders the federal law meaningless.

■ Plaintiff's position misapprehends both the effect and scope of the state law rule applicable here. In the first instance, it is clear that the rule does not infringe directly upon the protections accorded investors by the regulatory scheme of section 14(a). It does not condone conduct violative of that section. Further, it may be noted that protection of investors is also a fundamental purpose of the Investment Company Act.[24] Indeed that Act contains a provision concerned with proxies [25] analogous to section 14(a). In *Burks*, as noted, the Court strongly indicated that a rule such as the one involved here was consistent with the Investment Company Act. Thus an underlying policy of investor protection was not regarded as necessarily inconsistent with the business judgment rule in appropriate circumstances.

■ Plaintiff's argument also implies incorrectly that derivative actions are the sole private means of redressing violations of section 14(a) and enforcing the Congressional policy of protecting investors. The cause of action implied under section 14(a), however, can also be asserted by an individual shareholder in his own behalf or as a class action on behalf of all affected shareholders [26] and therefore the business judgment rule cannot be said to preclude private enforcement of the proxy rules. Moreover, as the Supreme Court made clear in the

---

21. 441 U.S. at 483, 99 S.Ct. at 1841. The Court also noted that when Congress intended to prevent board action from cutting off derivative suits, it did so expressly. *Id.* at 1840 (citing examples).

22. *Lewis v. Anderson*, 615 F.2d 778, CCH Fed. Sec.L.Rep. ¶ 97,153 (9th Cir. Oct. 29, 1979); *Abbey v. Control Data Corp.*, 603 F.2d 724 (8th Cir. 1979), *cert. denied,* —— U.S. ——, 100 S.Ct. 670, 62 L.Ed.2d 647 (1980). *See also Lewis v. Adams*, Civ. No. 77–266C (N.D.Okl. Oct. 16, 1979) (unpublished opinion).

23. 615 F.2d 778 at 784, CCH Fed.Sec.L.Rep. ¶ 97,153 (Oct. 29, 1979) at ——.

24. *Abrahamson v. Fleschner*, 568 F.2d 862, 873 (2d Cir. 1977), *cert. denied,* 436 U.S. 905, 98 S.Ct. 2236, 56 L.Ed.2d 403 (1978); *Harriman v. E. I. DuPont de Nemours & Co.*, 411 F.Supp. 133, 159 (D.Del.1975).

25. 15 U.S.C. § 80a–20.

26. *J. I. Case Co. v. Borak*, 377 U.S. 426, 431, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964); *Vernon J. Rockler & Co. v. Minneapolis Shareholder Co.*, 69 F.R.D. 1, 3–4 (D.Minn.1975); *Gerstle v. Gamble-Skogmo, Inc.*, 298 F.Supp. 66, 102–03 (E.D.N.Y.1969), *modified on other grounds*, 478 F.2d 1281 (2d Cir. 1973). *Cf. Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 378, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970) (action brought both derivatively and as a class action).

*Borak*[27] case, the basis for permitting an action under section 14(a) to be brought derivatively was that violations may injure the corporation as a whole. Thus, the effect of applying the business judgment rule is not to curtail enforcement of federally created rights but merely to provide that where such rights inure to the corporation they are to be exercised by the body to whom state law allocates the power and duty to press those rights—initially to the directors of the corporation and secondarily to the shareholders where the whole board is disqualified. If this derivative claim is not pursued, plaintiff is free to assert his independent claim in an appropriate action.

■ The cornerstone of the business judgment rule is the independence and disinterestedness of the directors charged with responsibility for decisions. It requires a group of directors who are genuinely independent of the disqualified board and disinterested in the action; it requires them to exercise their business judgment in fact and to do so in good faith. No court is required to take for granted that these conditions have been met and the shareholder is free to challenge the committee's bona fides. With these inherent limitations in play, there is simply no merit to plaintiff's contention that application of the business judgment rule in the instant case renders section 14(a) meaningless or is inconsistent with the basic policy underlying that section.

In conclusion, under the analysis prescribed in *Burks*, if a committee of independent, personally disinterested directors of Zapata has determined in good faith that in its business judgment the continuation of this action is not in the best interests of that corporation, the action must be dismissed.

■ Thus we reach the final issue—the disinterestedness and independence of the Committee. Plaintiff's challenge thereto is based upon "the opinion" of plaintiff's counsel that circumstances surrounding "the appointment of [the members of the Committee] as directors, and as members of the Committee, and certain conclusions set forth in their report creates issues of fact as to their independence, diligence, and good faith."[28] Initially, plaintiff argues that the business judgment rule in effect empowers the "wrongdoers" by their very designation of the independent committee to obtain exoneration. This cynical attitude would require a per se disqualification of any committee appointed by a board exercising its statutory authority no matter how far the independent committee may be removed from the transactions that are at the core of the litigation. Moreover, this concept would sterilize the corporation, for "to disqualify the entire board would be to render the corporation powerless to make an effective business judgment with respect to prosecution of the derivative action."[29]

Turning to the question of the Committee's independence and disinterested status, it consisted of two directors, F. Arnold Daum and George A. Lorenz. Daum became a director of Zapata on May 25, 1979 and Lorenz on June 25, 1979. Each was appointed to the board to fill a vacancy in accordance with Delaware law and the cor-

**27.** *J. I. Case Co. v. Borak*, 377 U.S. 426, 432, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964).

**28.** Plaintiff's counsel in response to this motion requested discovery as to the good faith of the directors. Upon the argument of the motion it appeared that such discovery has been ordered in the action pending in the Southern District of Texas (see n.4 *supra*) and was scheduled to be conducted in this District. This Court reserved decision upon the understanding that plaintiff would be permitted to participate in that discovery and Zapata's counsel invited his participation. Documents were produced for inspection and copying by plaintiff's counsel and accountant. However, plaintiff's counsel expressly waived participation in the depositions of the Committee and its counsel. Upon conclusion of the deposition-discovery procedure, the parties were given leave to file additional papers. Plaintiff's counsel rested upon those previously submitted.

**29.** *Auerbach v. Bennett*, 47 N.Y.2d 619, 633, 419 N.Y.S.2d 920, 928, 393 N.E.2d 994, 1002 (1979).

poration's by-laws.[30] The resolution establishing the Committee states that neither was a director nor involved with Zapata at the times relevant to the investigations they were to undertake. Additionally, the resolution delegated to the Committee the full power of the board of directors in connection with its investigation and determination and makes its determination fully binding on Zapata and not subject to review by the board.

Daum, an experienced lawyer in a large New York law firm, had no contact with Zapata prior to his becoming a director, nor had he known any of the individual defendants with the exception of Mackin with whom he had once had professional contact when the latter was an attorney for another corporation. Lorenz is a businessman. He had been a shareholder and director in a corporation acquired by Zapata in 1972, at which time he severed his connection with the acquired company. While he made the acquaintance of several of the director-defendants at the time of the acquisition, and since 1972 has had occasional discussions with a vice president of Zapata relating to the business of the acquired corporation, Lorenz has had no substantial involvement with Zapata or any of the defendants.

■ These facts, none of which is disputed by the plaintiff, indicate that the Committee's members were independent of the remainder of the board both formally in terms of the Committee's power and personally in terms of their relationships with the company and its directors. They also establish that neither had a disqualifying personal interest in the outcome of the Committee's decision.

Plaintiff nevertheless argues that three facts show a lack of independence. He observes that the Committee engaged Daum's law firm to act as its independent counsel and contends that Daum "personally" profited from the investigation. The implication that Daum, because his firm was to be paid for the legal work it per-

formed, was somehow predisposed to a particular determination of the matter before the Committee is, quite simply, a non sequitur and hardly worthy of comment.

Plaintiff also presses the point that Lorenz did not become a member of the Zapata board until the day the Committee was created; that his appointment to the board was therefore for the sole purpose of serving on the Committee. Again the logic of this argument fails. If anything, the circumstances of Lorenz's appointment stressed by plaintiff accentuate the degree to which Lorenz was independent and disinterested, indicating as they do that he had no ties to Zapata other than those growing out of his duties on the Committee.

■ Finally, plaintiff places great emphasis upon the fact that the Committee members were appointed to the board by the existing directors—"the wrongdoers"—rather than having been elected by the corporation's shareholders. The manner in which Daum and Lorenz became directors accorded with Delaware law.[31] Appointed directors are no less directors than elected ones. They cannot be dismissed except by those procedures applicable to any director and once appointed have no dependence upon the remainder of the board. Further, they owe the same fiduciary duty as any director to the corporation and its shareholders. Plaintiff notes that in other cases applying the business judgment rule in the context of independent director committees, the independent directors were elected directors. However, in those cases,[32] as here, though elected to the board initially, the decision to place the independent directors on the Committee—i. e., to empower them to determine whether the litigation should go forward—was not a shareholder decision but a board action.

■ In short, the fact that the Committee's members became directors by appointment does not itself indicate that they bore

---

**30.** See Del.Gen.Corp.Law § 223(a); Art. III, § 8 of the By-laws of Zapata Corporation.

**31.** See note 30, supra.

**32.** See cases cited at footnote 16.

any special loyalty to the disqualified directors or that they were any less effectively divorced from dependence upon the board then would have been the case with elected directors. It certainly does not demonstrate that either man had any disqualifying personal interest in the outcome of the Committee's review. In the absence of any facts—other than counsel's vigorous innuendo—indicating that the disqualified directors used their appointment power to "stack" the Committee, the Court concludes that nothing in the record raises an issue of fact as to the independence and disinterestedness of either Daum or Lorenz.

Plaintiff assails the Committee's good faith as well as its independence, contending basically that its report reveals on its face that the Committee's investigation was a result-oriented smoke screen to justify termination of the derivative suits. Here too, the Court finds that plaintiff has not shown any material fact issue exists. To the contrary, the record reflects that the investigative procedures employed by the Committee were searching, comprehensive, and took into account significant factors appropriate to an impartial and objective business judgment.

The Committee, after its creation in June, spent approximately three months reviewing and considering matters pertinent to the three pending derivative actions and preparing its report. It retained its own counsel—Daum's firm, Cahill, Gordon & Reindel—to assist it. It reviewed the pleadings in the actions and examined thousands of related documents. It considered the depositions of parties and witnesses taken in the actions and conducted numerous interviews—including with the defendant-directors, other directors, Zapata's present and former officers and employees, its auditors, tax advisers, and others. They met with counsel for plaintiff in the Texas action and counsel for plaintiff in this action.

The Committee emphasized its concern over the expense to which the company would be exposed by a continuation of the lawsuits, noting that it would be required to pay not only its own counsel but that there was the prospect of additional expense to Zapata for indemnification of the defendant-directors under Delaware law and the Corporation's by-laws.[33] The report observed that as of August 1979, Zapata had already paid counsel close to a half million dollars and that the ultimate expense to the corporation were the actions pursued could approximate one million dollars. A fair share of this can be allocated to this action, enough to absorb the estimated maximum recovery in the event this action were to be litigated and the derivative claim were upheld.[34]

The Committee reached its ultimate determination that the three actions were not in Zapata's best interest for twelve specified reasons.[35] While only a few of these considerations involve the Committee's assessment of the legal merits of the respective claims, the remainder involving considerations of a non-legal nature, plaintiff's attack on the Committee's good faith centers upon its stated belief that this action lacks legal merit. He argues that the report failed to fully set forth the allegations in this case and that its specific conclusion as to the monetary impact of the foregone

---

**33.** *See* Del.Gen.Corp.Law § 145; Art. V of the By-laws of Zapata Corporation.

**34.** This Court has indicated its doubt that plaintiff, even if he prevailed, could recover substantial damages. *See Maldonado v. Flynn*, 477 F.Supp. 1007 (S.D.N.Y.1979).

**35.** The Committee gave as its reasons the following considerations: (1) the asserted claims appeared to be without merit; (2) costs of litigation, exacerbated by likelihood of indemnification; (3) wasted senior management time and talents on pursuing litigation; (4) damage to company from publicity; (5) that no material injury appeared to have been done to company; (6) impairment of current director-defendants' ability to manage; (7) the slight possibility of recurrence of violations; (8) lack of personal benefit to current director-defendants from alleged conduct; (9) that certain alleged practices were continuing business practices, intended to be in company's best interests; (10) legal question whether the complaints stated a cause of action; (11) fear of undermining employee morale; (12) adverse effects on the company's relations with employees and suppliers and customers.

tax deduction can be shown to be erroneous, implying that these errors were deliberate and designed merely to support a previously determined disposition.

█ Even if the Committee were in error in its evaluation of the legal merits of this lawsuit or the availability to Zapata of the tax benefit, such an error does not necessarily taint either the adequacy or appropriateness of the investigation conducted or the good faith of the Committee. It does not indicate that "the investigation has been so restricted in scope, so shallow in execution, or otherwise so *pro forma* or halfhearted as to constitute a pretext or sham."[36]

█ Notably, the Committee labored under no compulsion to conclude that the actions were lacking in merit. Such a finding is not a prerequisite to the exercise of business judgment though of course it is a factor that may well be considered. To the contrary, the essence of the business judgment rule in this context is that directors may freely find that certain *meritorious* actions are not in the corporation's best interests to pursue.[37] Indeed, here liability is not a foregone conclusion as the issue of materiality remains for trial determination.

█ The final substantive judgment whether a particular lawsuit should be maintained requires a balance of many factors—ethical, commercial, promotional, public relations, employee relations, fiscal as well as legal.[38] The factors to be taken into account and their evaluation are for the Committee expressly appointed to consider them and are beyond the judicial reach. In the last analysis the decision required to be made and that in fact was made is not a legal but a business judgment. Plaintiff would require the Court to parse the Committee's complicated business determination—a task which is not part of the Court's role in administering the business judgment rule.

As the New York Court of Appeals has recently written:[39]

> [T]he courts cannot inquire as to which factors were considered by [a special litigation] committee or the relative weight accorded them in reaching that substantive decision . . . . Inquiry into such matters would go to the very core of the business judgment made by the committee. To permit judicial probing of such issues would be to emasculate the business judgment doctrine as applied to the actions and determinations of the special litigation committee. Its substantive evaluation of the problems posed and its judgment in their resolution are beyond our reach.

█ In sum, plaintiff's reiterated statement that the Committee was not independent and did not act in good faith is without evidential support. There is not a scintilla of evidence to sustain a charge of bad faith with respect to its judgment that the continuance of this action is contrary to the corporate interest. Plaintiff has not presented an iota of proof to impugn the independence, the disinterestedness or the good faith of the Committee. Plaintiff's counsel's "opinion," that the circumstances and facts pertaining to the appointment of the Committee members and their conclusions "creates issues of fact as to their independence, diligence and good faith," ipse dixit does not create an issue of fact. To accept counsel's "opinion" in the absence of evidential support as mandating a trial would make a dead letter of Rule 56 in cases of this type. Plaintiff, having fore-

---

**36.** *Auerbach v. Bennett*, 47 N.Y.2d 619, 634, 419 N.Y.S.2d 920, 929, 393 N.E.2d 994, 1003 (1979).

**37.** *See, e. g., Cramer v. General Tel. & Elec. Corp.*, 582 F.2d 259, 275 (3d Cir. 1978), *cert. denied*, 439 U.S. 1129, 99 S.Ct. 1048, 59 L.Ed.2d 90 (1979). *See also Burks v. Lasker*, 441 U.S. 471, 99 S.Ct. 1831, 60 L.Ed.2d 404 (1979); *Ashwander v. Valley Authority*, 297 U.S. 288, 343,

56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring).

**38.** *Cf. Auerbach v. Bennett*, 47 N.Y.2d 619, 633, 419 N.Y.S.2d 920, 928, 393 N.E.2d 994, 1002 (1979).

**39.** *Auerbach v. Bennett*, 47 N.Y.2d 619, 633–34, 419 N.Y.S.2d 920, 928, 393 N.E.2d 994, 1002 (1979).

gone the opportunity to depose and cross-examine the members of the Committee and its special counsel on any matter touching upon the nature, scope, and integrity of their investigation, or their ultimate determination, now seeks a full dress trial solely on the basis of counsel's "opinion." This Court is fully aware of the stringent requirements to be met before summary judgment can be granted.[40] But Rule 56 still retains its vitality—unsupported allegations may be disregarded and summary judgment is appropriate absent genuine issues about a material fact. It remains the rule that "the burden rests on the . . . party [opposing summary judgment] to show that he has a plausible ground for maintenance of the cause of action alleged in his complaint."[41] Indeed, our Court of Appeals in its most recent pronouncement on the summary judgment rule noted that:[42]

> [P]roperly employed, summary judgment is a useful device for unmasking frivolous claims and putting a swift end to meritless litigation. Thus, the mere possibility

that a factual dispute *may* exist, without more, is not sufficient to overcome a convincing presentation by the moving party. The litigant opposing summary judgment, therefore, "may not rest upon mere conclusory allegations or denials" as a vehicle for obtaining a trial. Rather, he must bring to the district court's attention some affirmative indication that his version of relevant events is not fanciful.

Plaintiff has advanced no "plausible ground" to warrant a trial. His counsel's "opinion" that the Committee did not act in good faith does not serve as a vehicle for obtaining a trial with its attendant heavy expense and loss of time.[43]

▬ In sum, the Court finds that the Committee, composed of independent and disinterested directors, conducted a proper review of the matters before it, considered a variety of factors and reached, in good faith, a business judgment that this action was not in the best interest of Zapata.[44]

40. *See, e. g., FLLI Moretti Cereali S.p.A. v. Continental Grain Co.*, 563 F.2d 563 (2d Cir. 1977); *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317 (2d Cir. 1975).

41. *Morgan v. Sylvester*, 125 F.Supp. 380, 389 (S.D.N.Y.1954), *aff'd*, 220 F.2d 758 (2d Cir.), *cert. denied*, 350 U.S. 867, 76 S.Ct. 112, 100 L.Ed. 768 (1955). *See also Beal v. Lindsay*, 468 F.2d 287, 291 (2d Cir. 1972).

42. *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980) (citations omitted).

43. Indeed, the New York State Court of Appeals in *Auerbach v. Bennett*, 47 N.Y.2d 619, 636, 419 N.Y.S.2d 920, 930, 393 N.E.2d 944, 1003–04 (1979), where plaintiff also attacked the good faith of a disinterested Committee which had recommended termination of a stockholders' derivative action and had not availed himself of pre-trial discovery, in words that are particularly appropriate to the instant situation observed:

> [A] word as to the contention advanced by the intervenor that summary judgment should at least be withheld until there has been opportunity for disclosure. We note preliminarily as a matter of procedure that there was no application at Special Term for any such relief nor is there in the record any opposing affidavit from which it appears that essential facts may exist which could be

obtained by disclosure (CPLR 3212, subd. [f]). It is also significant that neither in his brief nor on oral argument did [intervenor] identify any particulars as to which he desires discovery relating to the disinterestedness of the members of the special litigation committee or to the procedures followed by that committee. To speculate that something might be caught on a fishing expedition provides no basis to postpone decision on the summary judgment motions . . . . .

44. Since the drafting of this opinion and immediately before its filing in final form the Court of Appeals has decided a case, *Galef v. Alexander*, 615 F.2d 51, (2d Cir. 1980). That case and the instant one are distinguishable. The Court of Appeals' holding was premised on the fact that the directors making the determination to terminate the suit were not disinterested. They had authorized the options at issue in the lawsuit, had been elected pursuant to the challenged proxy statements and were named as defendants. Thus a discontinuance of the derivative action would have been to their personal benefit.

The Court of Appeals expressly left undecided whether a state rule permitting non-defendant directors or an independent committee to initiate a business judgment dismissal contravenes federal policy, the very issue addressed here.

Accordingly, Zapata's motion for summary judgment dismissing the action is granted. So ordered.