William HOWARD a/k/a Mujahid
Farid, Plaintiff,

v.

Correction Officer CRONK and Superintendent of the Green Haven Correctional Facility, Defendants.

No. 79 Civ. 6605.

United States District Court,
S. D. New York.

Nov. 30, 1981.

Charles P. Kelly, New York City, for plaintiff.

Robert Abrams, Atty. Gen. of N. Y., New York City, for defendants; Amy Juviler, Asst. Atty. Gen., New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiff, William Howard,[1] brings this action against Correction Officer Robert Cronk and the Superintendent of the Green Haven Correctional Facility pursuant to 42 U.S.C., section 1983 alleging that Officer Cronk wrongfully deprived him of his right to visit with his attorney. Defendants move for summary judgment on the grounds that no violation of plaintiff's constitutional rights has occurred since the restrictions placed upon plaintiff's access to his attorney are reasonable for the maintenance of prison security and alternatively, that defendant Cronk's actions, which form the basis of the claim, are protected under the qualified immunity granted to prison officials in *Procunier v. Navarette.*[2]

The incident giving rise to this suit occurred on October 25, 1979 when plaintiff received a pass to the visiting room to meet with his attorney.[3] Plaintiff arrived in the visiting room area carrying some "legal papers and books."[4] He states that the book was "Gilbert's Law Book, Consolidated" and describes it as six or seven inches thick.[5] Officer Cronk, pursuant to standard prison policy, searched the plaintiff and examined his papers and told him that while he could bring his papers into the visiting room, prison policy did not allow prisoners to bring books into a legal visit. Plaintiff argued with Officer Cronk about this restriction but after Cronk continued to insist that the book could not be taken into the visiting room, plaintiff returned to his cellblock with his book.[6] He did not tell Officer Cronk that he intended to return to the visiting area.[7] After leaving the book at his cellblock, plaintiff claims that he attempted to return to the visiting area but was denied admission—he does not recall the person involved in preventing his return except that he is sure it was not Officer Cronk.[8]

Plaintiff advances two theories to support his claim that the denial of his legal visit violated his constitutional rights. First, that the policy of not allowing prisoners to take law-related books into a legal visit is an unlawful restriction of their right to counsel. Second, that regardless of the lawfulness of the restriction, plaintiff's right to visit with his attorney was violated when, after complying with the regulation and returning the book to the cellblock, he was refused permission to return to the visiting area.

The Court is mindful that summary judgment is only appropriate when a review of the entire record demonstrates "that there is no genuine issue as to any material fact" and that the Court must "resolve all

---

1. The plaintiff, as the result of a legal name change proceeding, is now known as Majahid Farid.

2. 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978).

3. Plaintiff had an appointment to meet with his attorney concerning a name change proceeding; the court proceeding subsequently occurred and, as noted above, plaintiff was permitted to change his name to Majahid Farid.

4. Farid Deposition at 16.

5. *Id.* at 16–17.

6. *Id.* at 23–24.

7. *Id.* at 24.

8. *Id.* at 19, 25.

ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought." [9] Nevertheless, a litigant opposing summary judgment "may not rest upon mere conclusory allegations" but rather must bring to the Court's attention some affirmative indication that his version of relevant events is not fanciful.[10] "[N]either courts nor defendants should be subjected to trials which can be little more than harassment." [11]

■ "[T]he first inquiry in any section 1983 suit ... is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.' " [12] Certainly prisoners have a general constitutional right to visit with their legal counsel.[13] Such right is not absolute, however, and prison officials may restrict such attorney-client contacts through reasonable administrative rules and practices for the maintenance of prison security and order provided they do not "unjustifiably obstruct" plaintiff's ability to consult with his attorney.[14]

■ Plaintiff here attacks the prison policy of not allowing prisoners to take books into visits with attorneys. In evaluating a prison regulation, as the Supreme Court has recently noted in *Bell v. Wolfish*,[15] prison administrators are entitled to substantial deference:

[T]he problems that arise in the day-to-day operation of a correction facility are not susceptible of easy solutions. Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal discipline and to maintain institutional security.[16]

Not allowing prisoners to take books into visits with attorneys is a reasonable rule for, as the Court had opportunity to note in the context of an analogous regulation restricting the receipt of hardcover books through the mails, the security problem posed by books as a vehicle for smuggling contraband into an institution is "obvious." [17] In this circumstance, a policy which excludes books carried by a prisoner cannot be said to so "unjustifiably obstruct" his access to his attorney so as to amount to a constitutional violation. It may be assumed that his attorney is knowledgeable on legal matters to be discussed and the prisoner, of course, is free to call to his lawyer's attention any legal authority, either orally or by notes on paper, he thinks is of significance. Plaintiff having suffered no constitutional injury by reason of the enforcement of the prison regulation, summary judgment is granted to the defendants.

■ Plaintiff's alternative theory of wrongful denial of the right to a legal visit centers on his inability to return to the visiting area after he had complied with the regulation and returned the book to the cellblock. However, the claim that the refusal to allow plaintiff to return to the visiting area was an intentional and malicious denial of a legal visit is without sup-

---

**9.** *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980); *Heyman v. Commerce & Industry Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir. 1975) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)).

**10.** *Quinn, supra*, 613 F.2d at 445.

**11.** *Applegate v. Top Associates, Inc.*, 425 F.2d 92, 96 (2d Cir. 1970).

**12.** *Baker v. McCollan*, 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979).

**13.** *Procunier v. Martinez*, 416 U.S. 396, 410, 94 S.Ct. 1800, 1809, 40 L.Ed.2d 224 (1974) ("[I]nmates must have a reasonable opportunity to seek and receive the assistance of attor-

neys. Regulations and practices that unjustifiably obstruct the availability of professional representation or other aspects of the right of access to the courts are invalid"); *cf. Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977).

**14.** *Procunier, supra*, 416 U.S. at 419, 94 S.Ct. at 1814; *Cruz v. Beto*, 603 F.2d 1178, 1185 (5th Cir. 1979).

**15.** 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

**16.** *Id.* at 547, 99 S.Ct. at 1878.

**17.** *Id.* at 551, 99 S.Ct. at 1880.

port in the record. According to plaintiff's version of the events given at his deposition, after Cronk refused to allow plaintiff to enter the visiting room, he told the officer that he would take the book back to the cellblock. Plaintiff did not tell Officer Cronk that he intended to return to the visiting area. When he did attempt to return he was "unsuccessful"—but he cannot recall the correction officer who prevented his return except that he is sure it was not Cronk.[18] In the light of plaintiff's own version, there is no basis for a claim against Cronk with respect to plaintiff's alleged unsuccessful effort to return to the visiting area. Even drawing all reasonable inferences in favor of the plaintiff, as is required,[19] plaintiff has failed to allege facts with at least some degree of particularity sufficient to show that he has a plausible ground for his allegations that Officer Cronk acted intentionally and maliciously relative to his renewed attempt to return to the visiting area. A litigant may not rely upon vague conclusory allegations to withstand a motion for summary judgment[20] and, accordingly, summary judgment also is granted to the defendants as to this second theory of liability.

■ Moreover, viewing plaintiff's claim most favorably, at best what plaintiff has alleged is that he was denied a legal visit due to the negligence of the correction officer in failing to recognize plaintiff's allegedly implied but unexpressed intention to return to the visiting area and make the appropriate arrangements to allow such return. Such alleged negligence of the correction officer is clearly within the protection of the qualified immunity established for prison guards in *Procunier v. Navarette*[21] and such alleged negligence, therefore, is no bar to the granting of summary judgment.

Finally, as the Supreme Court noted in *Butz v. Economou*,[22] the use of summary judgment is especially appropriate here:

> Insubstantial lawsuits can be quickly terminated by federal courts alert to the possibilities of artful pleadings. Unless the complaint states a compensable claim for relief under the Federal Constitution, it should not survive a motion to dismiss. Moreover, the Court recognized in *Scheur [v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90] that damages suits concerning constitutional violations need not proceed to trial, but can be terminated on a properly supported motion for summary judgment based on the defense of immunity. *See* 416 U.S. at 250 [94 S.Ct. at 1693]. In responding to such a motion, plaintiffs may not play dog in the manger; and firm application of the Federal Rules of Civil Procedure will ensure that federal officials are not harassed by frivolous lawsuits.

For all the foregoing reasons, defendants' motion for summary judgment is granted.

So ordered.

---

**18.** Farid Deposition at 23–25.

**19.** See text at note (8) *supra.*

**20.** *Quinn, supra*, 613 F.2d at 445; *Maldonado v. Flynn*, 485 F.Supp. 274, 286 (1980); *Morpurgo v. Board of Higher Education*, 423 F.Supp. 704, 713 (1976).

**21.** 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978).

**22.** 438 U.S. 478, 507, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978).