**In re SUNSHINE MINING COMPANY SECURITIES LITIGATION.**

No. 77 Civ. 4020.

United States District Court,
S. D. New York.

May 25, 1979.

Wolf, Popper, Ross, Wolf & Jones, New York City, for plaintiff Maris; Donald N. Ruby, Michael P. Fuchs, New York City, of counsel.

Abraham I. Markowitz, New York City, for plaintiff Berenson.

Spengler, Carlson, Guber, Churchill & Brodsky, New York City, for defendant; Edward Brodsky, William J. McSherry, Jr., Robert D. Marafioti, New York City, of counsel.

### MEMORANDUM AND ORDER

WHITMAN KNAPP, District Judge.

In this multidistrict litigation, the defendants in two cases, *Maris v. Sunshine Mining*, and *Stolz v. Sunshine Mining Company* move for summary judgment on the ground that no federal question is presented, and accordingly there is no pendent jurisdictional basis for the state claims asserted. For reasons that follow that motion is granted.

Plaintiffs allege that as stockholders of Sunshine Mining Company, a corporation with its headquarters and principal place of business in the State of Idaho, they were injured by Sunshine management's initial refusal to accept a proposed tender offer by Great Western United Corporation and by its subsequent resistance to such tender offer.

Accepting as true the statements made in plaintiff Maris' memorandum, the relevant facts are as follows:

On March 19, 1977, Great Western, having acquired 335,070 shares of Sunshine stock, advised Sunshine's Board of Directors that it intended to make a tender offer which it would price at $16.75/share if the Board would approve the offer within twenty-four hours. Under existing Idaho law (then believed to be valid) such approval would have permitted the tender offer to proceed without extensive and time-consuming state registration proceedings. Great Western also advised the Board that, absent such approval, the tender offer would proceed, but at a lower price. The Sunshine Board made a public announcement that the offer had been received and was being considered, but did not give its approval within the specified twenty-four hours.

Two days later, on March 23, Great Western filed a registration statement with state officials as required by Idaho's anti-takeover statute, and filed a "13D statement" with the SEC. These papers indicated that Great Western was offering to purchase up to 2,000,000 Sunshine shares at $15.75/share. On March 25, Idaho officials, contending that there were inadequacies in Great Western's filings, took steps which prevented consummation of the tender offer.

Great Western met this challenge by Idaho State officials by instituting suit in the United States District Court for the Eastern District of Texas challenging the constitutionality of the Idaho anti-takeover statute. This suit was ultimately successful and on September 6, 1977, the court rendered a decision holding the Idaho statute unconstitutional and enjoining the State of Idaho from in any way interfering with the takeover. During the pendency of this lawsuit the Sunshine Board instituted its own suit in Idaho seeking to enjoin the tender offer. Sunshine's initial request for a preliminary injunction was denied.

On September 19, 1977 Great Western filed an amended 13D statement reducing the offering price to $14.75 and reducing the number of shares it would accept to 1,250,000. Two days later, on September 21, Sunshine management moved for another hearing on its request for a preliminary injunction. The Sunshine management suit was finally settled on October 4, 1977 by Great Western's agreement to raise its offering price to $15.00/share and to make an equivalent offer within eighteen months to all Sunshine stockholders. Throughout this entire period, Sunshine management made no public statements of any sort except to announce the various activities it was undertaking. Likewise, management never recommended to Sunshine shareholders that they refrain from tendering their shares.

Plaintiffs have not advised us as to the market price of Sunshine stock on March 19, 1977 when the tender offer was made. However, they have advised us that during the year of 1976 the market price ranged from 9½ to 13½ and that its book value at the close of the year was $4.70. From these facts it seems to us highly probable that if the Sunshine Board had approved the initial offer of $16.75 on March 19, 1977 (and if, as we shall assume, Great Western had carried out its intention to make that offer final) the plaintiffs and most members of their class would have accepted the offer. Moreover, as plaintiffs have not yet completed their discovery we shall assume for the sake of this motion that Sunshine management was—in all the activities described—motivated solely by its own selfish interests and was acting in complete disregard of its fiduciary obligations to its stockholders.[1]

Plaintiffs' federal claim is that the defendants violated § 14(e) of the 1934 Act (15 U.S.C. § 78n(e)) by "deceptively" obstructing Great Western's tender offer. Defendants' motion for summary judgment is three-pronged. First, they claim that no action by a defendant prior to the formal making of a tender offer can support a claim by a shareholder under § 14(e).

1. This assumption runs somewhat counter to the facts already developed by plaintiffs, in that, as we have seen, the final lawsuit instituted by Sunshine management resulted in raising Great Western's offer from 14.75 to 15.00 and in extending it to all Sunshine stockholders.

Second, that the damage to the shareholders is speculative. And third, that upon no interpretation of the facts can it be said that the defendants were guilty of fraud or deception as defined in the act. We do not pass on the first two contentions, but sustain the third and accordingly dismiss the complaints.

## Discussion

It is plaintiffs' contention that by withholding its support from Great Western's proposed tender offer, Sunshine management, acting in disregard of its fiduciary duties, violated Section 14(e). That section provides:

"It shall be unlawful for any person to make an untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or to engage in fraudulent, deceptive, or manipulative acts or practices, *in connection with any tender offer* or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation. The Commission shall, for the purposes of this subsection by rules and regulations define, and prescribe means reasonably designed to prevent, such acts and practices as are fraudulent, deceptive, or manipulative." 15 U.S.C. § 78n(e) (emphasis supplied).

In order for plaintiffs' complaint to withstand this motion to dismiss, we must find that the wrongful withholding of support for a proposed tender offer amounts to a fraudulent, deceptive, or manipulative act or practice. After *Santa Fe v. Green* (1977) 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480, such a finding is untenable.

In *Santa Fe*, the Supreme Court, although specifically concerned with § 10(b) of the Act, gave its views as to the overall purpose of the entire Act and as to the meaning of certain language appearing in both § 10(b) and § 14(e).

According to the Court, the fundamental purpose of the Act is the implementation of a "philosophy of full disclosure." Once this full and fair disclosure has occurred, any consideration of the fairness of any transaction would be "at most a tangential concern of the statute." *Supra*, at 478, 97 S.Ct. at 1303. Given the fact that breaches of fiduciary duty and corporate mismanagement are of such minimal concern in the Act, the Court concluded that Congress did not intend to imply a cause of action under 10B5 for such claims.

Turning to the language of 10B5 the Court in interpreting the phrase "manipulative practices," observed that "manipulation" is "virtually a term of art when used in connection with the securities market" and it went on to demonstrate that manipulative practices refer to "practices, such as wash sales, matched orders, or rigged prices, that are intended to mislead investors by artificially affecting market activity." *Supra* (at 476, 97 S.Ct. at 1302). This interpretation, according to the Court, is fully consistent with the fundamental purpose of the Act to promote full disclosure. A definition which would include instances of corporate mismanagement where shareholders were treated unfairly by a fiduciary, however, would be wholly inconsistent with the Congressional intent.

Although the Court did not have occasion specifically to discuss the word "fraudulently" (which does not appear in § 10[b]), it would be a wholly irrational reading of the opinion to assume that an anti-fraud provision in a section of the Act dealing with tender offers and using the terms "fraudulent", "deceptive", and "manipulative" rather than dealing with the purchase and sale of securities and using only the terms "deceptive" and "manipulative," should be given a meaning wholly inconsistent with the Act's fundamental purpose of requiring full and fair disclosure and with the meaning ascribed to the term "manipulative practices." Since plaintiff's claim that approval of the tender offer was withheld by management for purely selfish reasons amounts to no more than a charge that Sunshine management acted unfairly and in breach of its fiduciary duties, plaintiff does not state a cause of action under the federal securities laws. We must therefore dismiss the *Maris* and *Stolz* complaints.

■ Defendants in *Berenson v. Underweiser*, a stockholder derivative suit based on the same set of facts as the *Maris* and *Stolz* cases, move to dismiss the complaint, alleging that the Sunshine Mining Company should be aligned as a plaintiff rather than a defendant, and that therefore this court lacks diversity jurisdiction.

We reject defendants' contention and note that the argument ignores the reality of the situation presented by this case. Sunshine is currently controlled by the very officials that are being accused of wrongdoing in this action. Given this fact we cannot seriously consider defendants' claim that Sunshine's answer which does not admit or deny the allegations in the *Berenson* complaint indicates that the corporation is not in "antagonistic hands." *Kartub v. Optical Fashions* (S.D.N.Y.1958) 158 F.Supp. 757. We note further that even were Sunshine to be realigned as a plaintiff, the plaintiff in this case could choose to drop defendant Hamilton and thereby maintain complete diversity. Defendants' motion to dismiss the *Berenson* complaint is denied.[2]

SO ORDERED.

---

**2.** Although there is no basis for venue in the *Berenson* case, the defendants have not objected to venue and therefore any such objection

has been waived. *Concession Consultants, Inc. v. Mirisch* (2d Cir. 1966) 355 F.2d 369.