John F. MAHER et al., Plaintiffs,

v.

ZAPATA CORPORATION et al., Defendants.

Civ. A. No. H–79–234.

United States District Court, S. D. Texas, Houston Division.

May 27, 1980.

**3.** Defendant's motion to strike an affidavit filed by plaintiff's counsel, made at the hearing on this motion, is denied.

Jess Hall, Jr., Liddell, Sapp, Zivley & Brown, Houston, Tex., for plaintiffs.

Robert A. Hall, Woodard, Hall & Primm, John L. McConn, Jr., Butler, Binion, Rice, Cook & Knapp, John C. Held, Baker & Botts, Houston, Tex., for defendants.

## MEMORANDUM AND ORDER:

NORMAN W. BLACK, District Judge.

Plaintiffs filed this shareholders' derivative suit pursuant to the federal securities laws, the Texas Business Corporation Act and the common law. Plaintiffs have not made demand upon Zapata or its Directors to bring this suit. Plaintiffs argue that the demand would have been futile since all of the present members of the Board (not including the special committee, *infra*) are defendants in the action. (Second Amended Complaint at § 34).

### Allegations

Defendants have violated § 14(a) of the Securities Exchange Act of 1934 (the "Act"), (15 U.S.C. § 78n) and Rule 14a–9, 17 C.F.R. 240.14a–9 (1978) promulgated thereto through material misstatements and material omissions made in Zapata's proxy statements and materials circulated therewith dated January 27, 1977, December 27, 1977, and December 21, 1978. The material omissions herein referred to rendered the few factual statements actually made in those proxy materials false and misleading insofar as they did not adequately inform the stockholders of, among other matters, the lack of independence on the Board and the degree of domination of Zapata and the Board by Flynn and the abuse of Zapata's assets permitted thereby. (Second Amended Complaint at § 18).

Defendants have violated § 13(b)(2) of the Act as amended by the Foreign Corrupt Practices Act of 1977 (15 U.S.C. § 78m(b)(2)) in that Zapata, through its Board and management, has failed to make and keep books, records, and accounts to accurately reflect the transactions and dispositions of the assets of Zapata. (Second Amended Complaint at § 21).

Defendants have violated § 13(a) of the Act (15 U.S.C. § 78m(a)), by failing to disclose material information necessary to make required statements in its form 10–K Annual Report filed December 21, 1978, not misleading in light of the circumstances under which they were made. (Second Amended Complaint at § 25).

Defendants have violated Article 2.02 A(6) of the Texas Business Corporation Act ("T.B.C.A.") made applicable to Defendants by Article 8.02 A, T.B.C.A. by making loans to its officer—directors and officers. (Second Amended Complaint at § 28).

Defendants have breached the fiduciary duties imposed upon them by law by their failure to diligently superintend and oversee the affairs of Zapata, by their failure to exercise independent judgment, by their sacrificing the welfare of Zapata and its stockholders to the self-serving desires of Flynn and others and by their failure and refusal to set up adequate controls to prevent the waste of the assets of Zapata. (Second Amended Complaint at § 31).

*Special Committee*

On June 25, 1979, the Board of Directors of Zapata established a Committee, pursuant to 8 Del.C. § 141(c), to investigate the allegations made by Plaintiffs in this suit and to decide whether the action should be maintained on behalf of the corporation. The members of the Committee were F. Arnold Daum and George A. Lorenz, outside directors who are not defendants in this case. Both men were elected to the Board after the commencement of this suit.

The Board invested the Committee with unrestricted, unreviewable authority to conduct the investigation and, if advisable, to assert claims against present or former officers and directors of Zapata. The resolution establishing the Committee provided in pertinent part:

RESOLVED, that the Committee shall

(1) conduct or cause to be conducted such review, analysis and further investigation of the circumstances surrounding all matters referred to, or which may be referred to, in the action of *John F. Maher and Robert L. Easton v. Zapata Corporation, et al.,* or any other action which is based in whole or in part upon a common nucleus of operative facts, as the Committee deems necessary or desirable to determine whether or not the Corporation shall undertake any litigation against one or more of the present or former directors or present or former officers of the Corporation or against anyone else in respect of such matters or take any other action in respect thereof;

(2) make the determination contemplated in (1) above; and

(3) undertake and supervise any action necessary or appropriate to implement any such determination.

The Committee retained the New York law firm of Cahill Gordon & Reindel to act as its Special Counsel. The law firm has allegedly not represented the corporation or any of the Defendants prior to this time.

From June 25, 1979, until September 21, 1979, the Committee conducted an investigation of the allegations made by Plaintiffs in this suit and other related matters. The Committee interviewed witnesses, reviewed the transcripts of depositions, and examined interview notes and documents.

On September 21, 1979, the Committee issued a report of its investigation in which it decided, "in the exercise of [its] business judgment", that the "continued maintenance [of the action] is inimical to the Company's best interests . . ." (Report at 23.) Specifically, the Committee reached the following conclusions:

It is our considered business judgment that further legal action by or on behalf of the Company against the present defendants or any other present or former officers or directors is not in the Company's best interest because (i) the claims asserted appear to be without merit; (ii) litigation costs would be inordinately high in view of the unlikelihood of success and would be further exacerbated by the probable right of indemnification by the defendants from the Company if the defendants are successful; (iii) the time and talents of the Company's senior management would be wasted on lengthy pretrial and trial proceedings; (iv) continuing publicity about past events could be damaging to the Company's ongoing and future business; (v) there does not appear to have been any material injury to the

Company; (vi) further legal action against the present defendants (other than Messrs. Flynn, Naess or Wolcott) could significantly impair their ability to manage the Company's affairs; (vii) litigation is unnecessary as a policing action as the possibility of recurrence is slight in light of new internal controls and new top management; (viii) none of the present defendants obtained any improper personal benefit from the conduct alleged; (ix) certain of the practices alleged were a continuing business practice at the time and were intended to serve the business interests of the Company; (x) there is a serious legal question whether the New York and Texas Complaints state a cause of action under the federal securities laws and whether the Company has standing to assert such a claim; (xi) the continuation of these actions will undermine employee morale, as will any attempt to revoke options already granted and/or exercised or to call any loans currently outstanding; and (xii) the likely adverse effects on the relationship between the Company and the defendants, on the one hand, and the Company and its suppliers and customers, on the other, far outweigh any potential recovery.

(Report at 21–22) (footnote omitted). Based upon these conclusions, the Committee in the exercise of its business judgment directed counsel for Zapata to move this Court for a dismissal of this action. (Report at 22–23). Presently pending before the Court is Defendants' motion to dismiss, or, in the alternative for summary judgment, based upon the business judgment determination by the special committee.

### Business Judgment Rule

◼ It is well settled that the management of a corporation is entrusted to its board of directors, and that business judgments made by the board are not subject to review unless they are made in bad faith. The business judgment rule extends to decisions of boards of directors to pursue or abandon litigation. The principle was articulated by Mr. Justice Brandeis in *United*

*Copper Securities Co. v. Amalgamated Copper Co.*, 244 U.S. 261, 263–264, 37 S.Ct. 509, 510, 61 L.Ed. 1119 (1917):

> Whether or not a corporation shall seek to enforce in the courts a cause of action for damages is, like other business questions, ordinarily a matter of *internal management*, and is left to the discretion of the directors, in the absence of instruction by vote of the stockholders. Courts interfere seldom to control such discretion intra vires the corporation, except where the directors are guilty of misconduct equivalent to a breach of trust, or where they stand in a dual relation which prevents an unprejudiced exercise of judgment. . . . (emphasis added).

More recently, the Supreme Court in *Burks v. Lasker*, 441 U.S. 471, 99 S.Ct. 1831, 60 L.Ed.2d 404 (1979), established a two-step inquiry: (1) Does the applicable state law (in this case, Delaware, since Zapata is a Delaware corporation—*see Abbey v. Control Data Corp.*, 603 F.2d 724, 728 (8th Cir. 1979), *cert. denied*, 444 U.S. 1017, 100 S.Ct. 670, 62 L.Ed.2d 647 (1980)) permit independent directors to terminate a derivative action against other board members; and, if so, (2) whether such a state law rule is consistent with the policies of the federal securities act.

While the Delaware Supreme Court has not precisely addressed the first issue, the Court of Appeals in *Abbey v. Control Data Corp.*, *supra* at 729–730, concluded, after examining Delaware law, that the law permitted a derivative action to be terminated by disinterested, independent directors. *Also See Maldonado v. Flynn*, United States District Court, Southern District of New York, 485 F.Supp. 274, 278 (1980).

This Court does not concur with that result for several reasons. The Court in *Abbey* relied upon *Puma v. Marriott*, 283 A.2d 693 (Del.Ch.1971), and *Beard v. Elster*, 39 Del.Ch.153, 160 A.2d 731 (Del.Supr.1960), to conclude that Delaware law permits nondefendant directors to utilize the business judgment doctrine to bar a derivative action against other directors. The Court at

729 quoted the following language from those decisions:

[S]ince the transaction complained of was accomplished as a result of the exercise of independent business judgment of the outside, independent directors whose sole interest was the furtherance of the corporate enterprise, the court is precluded from substituting its uninformed opinion for that of the experienced, independent board members. . . .

283 A.2d at 696.

We think that the fact that a disinterested Board of Directors reached [its decision to grant certain stock options] by the exercise of its business judgment is entitled to the utmost consideration by the courts in passing upon the results of that decision. Such has long been the law of this State. *Blish v. Thompson Automatic Arms*, 30 Del.Ch. 538, 64 A.2d 581.

160 A.2d at 738 (footnote omitted).

■ *Puma* and *Beard* involved the traditional application of the business judgment rule, that is, as a substantive defense on the merits of the case. This Court is not convinced that the Eighth Circuit's result is supported by Delaware law, and accordingly is not bound by its decision. *See Maple v. Citizens National Bank & Trust*, 437 F.Supp. 66, 68–69 (W.D.Okl.1977); *Schultz v. Crotty Bros.*, 310 F.Supp. 761, 768 (E.D. Tex.1970); *Gulf Inland Corp. v. U. S.*, 570 F.2d 1277, 1278 (5th Cir. 1978).

Further support for this Court's non-reliance upon the *Abbey* decision is the opinion of the Vice Chancellor in *Maldonado v. Flynn*, 413 A.2d 1251 Civil Action No. 4800 (Del.Ch. Mar. 18, 1980). The Court, in a thorough, well-reasoned analysis of Delaware law, stated:

All of . . . [the] cited federal cases [for example, *Abbey*] state the business judgment rule, but incorrectly assume that State law necessarily enables the corporate directors (or a committee thereof) to compel the dismissal of a pending stockholder's derivative suit by invoking the business judgment rule. Although it is the law of the State of incorporation which determines whether the directors have this power of dismissal, *Burks v. Lasker*, *[supra]*, no Delaware Court has ever previously considered this issue, nor does any Delaware statute address the question. *It is clear, however, that under well settled Delaware law, the directors cannot compel the dismissal of a pending stockholder's derivative suit which seeks redress for an apparent breach of fiduciary duty, by merely reviewing the suit and making a business judgment that it is not in the best interests of the corporation.*

*Id.* at 1257 (citation omitted and emphasis added).

[A] stockholder may be denied the right to assert on behalf of his corporation a corporate right of action when he has failed to make a proper demand, if, of course, one is necessary; where he seeks to assert a right not legally assertable by his corporation; or where the purportedly derivative action asserts a purely legal cause of action against an extracorporate party *without any allegation that the directors have acted improperly.*

*Id.* at 1259 (citations omitted and emphasis added).

Maldonado's complaint does not attack as improper the 1979 decision of the Committee to seek the dismissal of this litigation, which was probably an exercise of business judgment, although was irrelevant to the dismissal issue now before me. Rather, Maldonado is attacking the 1974 decision of the directors to accelerate the option dates as being in *bad faith or in breach of the directors' fiduciary duties.*

*Id.* at 1259 (emphasis added).

The Vice-Chancellor went on to say that:

In summary, an analysis of the business judgment rule shows that while it is a limitation of liability and ordinarily protects corporate directors when they, in good faith, decide not to pursue a remedy on behalf of the corporation, it is *not* an independent grant of authority to the directors to dismiss derivative suits. Under settled Delaware law the directors do

not have the right to compel the dismissal of a derivative suit brought by a stockholder to rectify an apparent *breach of fiduciary duty* by the directors to the corporation and its stockholders after the directors have refused to institute legal proceedings, because the stockholder then possesses an *independent right* to redress the wrong [by bringing a derivative suit].

*Id.* at 1262 (emphasis added).

The right of a court to review the charges and to determine if the complaining stockholders have a cause of action does not conflict with the business judgment rule because that rule is irrelevant to the issue of whether the stockholders have an *independent right* to bring an action on behalf of the corporation to rectify a *breach of fiduciary* duty where the corporation itself refuses to act, nor does the business judgment rule always preclude a judicial inquiry. See *Cramer v. Gen. Tel. & Elec. Corp.*, 3rd Cir., 582 F.2d 259 (1978).

> *Under our system of law, courts and not litigants should decide the merits of litigation. Aggrieved stockholders of Delaware corporations ought to be able to expect that an impartial tribunal, and not a committee appointed by the alleged wrongdoers, will decide whether a stockholder's derivative suit alleging breach of fiduciary duty has any merit.* See *Galef v. Alexander*, 2nd Cir., 615 F.2d 51 (1980); *Groel v. United Electric Co. of N. J.*, N.J. Ch. [70 N.J.Eq. 616], 61 A. 1061 (1905).

*Id.* at 1263 (emphasis added).

■ Although the "States highest court is the best authority of its own law, if there be no decision by that court then federal authorities must apply what they find to be the state law after giving 'proper regard' to relevant rulings of other courts of the state." *Commissioner of Internal Revenue v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1783, 18 L.Ed.2d 886 (1967), cited . in *Lewis v. Anderson*, 615 F.2d 778 (9th Cir. 1979). "[W]here no state court has decided the issue a federal court must 'make an educated guess as to how that state's supreme court would rule.'" *Nobs Chemical,*

*U.S.A., Inc. v. Koppers Co., Inc.*, 616 F.2d 212, 214 (5th Cir.1980).

■ The Supreme Court of Delaware has never faced the issue presented here. This Court is convinced, however, that the Delaware Supreme Court would adopt the reasoning of the lower court, and rule that the business judgment rule is a purely defensive rule, and not a basis for granting a motion to dismiss a stockholders' derivative suit against a corporation and its directors alleging a breach of fiduciary duty when the corporate directors, or a committee thereof, in their collective business judgment, determined that the suit was not in the best interests of the corporation.

Since Delaware law does not permit independent directors to terminate a derivative action against other board members, this Court need not address whether the state law rule of dismissal is consistent with the policies of the federal securities act (second prong of inquiry, *supra*).

■ In further support of this Court's determination that the action should not be dismissed based on the directors' business judgment is the issue concerning the independence, good faith, and reasonableness of the committee's decision. As the Court in *Cramer v. General Telephone and Electronics Corp.*, 582 F.2d 259, 275 (3rd Cir. 1978), cert. denied, 439 U.S. 1129, 99 S.Ct. 1048, 59 L.Ed.2d 90 (1979), stated:

> In order for the directors' judgment to merit judicial deference, the judgment must have been made in good faith and independently of any influence of those persons suspected of wrongdoing. In addition, where the shareholder contends that the directors' judgment is so unwise or unreasonable as to fall outside the permissible bounds of the directors' sound discretion, a court should, we think, be able to conduct its own analysis of the reasonableness of that business judgment. The opinions in *United Copper Securities Co.,* and *Miller [v. American Tel. & Tel. Co.,* 507 F.2d 759] (3 Cir. 1974) both suggest that courts have some limited power to review the reasonableness of

the directors' judgment that a derivative suit is not in the best interests of the corporation.

*Also see Abbey v. Control Data Corp., supra* at 727, 730 (rule apparently applies to any reasonable, good faith determination by any independent board of directors).

■ Defendants argue that the issue of good faith and independence was already determined by the New York District Court in *Maldonado* and accordingly should be given res judicata, or, in the alternative, collateral estoppel effect in the case at hand. A plaintiff is estopped from asserting a claim that the plaintiff had previously litigated and lost against another defendant, *Cramer v. General Telephone & Electronics Corp., supra* at 267, citing *Blonder-Tongue Laboratories, Inc. v. University Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), so long as he had a full and fair opportunity to litigate the issue in the prior suit. *Id.* at 267–268. Although different shareholders brought the two actions, the actual plaintiff on whose behalf the claims were brought is the identical corporation, Zapata. *Id.* at 267. It appears that the plaintiff in *Maldonado* had a full and fair opportunity to litigate the good faith and independence of the committee. They had every incentive to prosecute vigorously the issue of the bona fides of the committee. Plaintiffs in this action, however, challenge that incentive through its claim of ineffective representation. Federal courts will not bind nonparty shareholders in a derivative suit unless their interests were adequately represented. *Id.; Papilsky v. Berndt*, 466 F.2d 251, 260 (2nd Cir.), *cert. denied*, 409 U.S. 1077, 93 S.Ct. 689, 34 L.Ed.2d 665 (1972); *see Southwest Airlines Co. v. Texas International Airlines*, 546 F.2d 84, 95 (5th Cir. 1977).

The Court in *Maldonado* "only" addressed the issue of good faith of the business judgment and not the issue of reasonableness. Furthermore, that decision is presently on appeal to the Second Circuit. In view of Plaintiffs' allegations of inadequacy of representation, and recognizing the Fifth Circuit's view of the estoppel effects of a judgment on appeal, *Guaranty Underwriters v. Johnson*, 133 F.2d 54, 56 (5th Cir. 1943), this Court intimates no decision with regard to the issues of res judicata or collateral estoppel.

■ With respect to the case at hand, this Court is concerned whether the Committee's decision was in good faith within the bounds of reason. Plaintiffs' allegation that the Committee merely conducted a "rationalization" of the claims instead of an investigation since the exculpation of Defendants' conduct was foreordained is not totally incomprehensible in view of the fact that the Committee was appointed by the alleged wrongdoers. Furthermore, "despite [an] adverse business judgment, [a] shareholder should be able to maintain a derivative action where the corporation claim is clear, the costs of litigation are relatively small in relation to the probable recovery, and a lawsuit would not overly disrupt the commercial relation of the corporation. *Cramer v. General Telephone & Electronic Corp., supra* at 275 n.21. This Court questions the Committee's balancing of the foregoing interests, recognizing that although it "must respect the board's decision if it is within the broad bounds of reason, . . . the noninterference doctrine should not be carried to the extreme of making an unreasonable reference of the board dispositive of the issue." *Id.*

### Conclusion

For the foregoing reasons, Defendants' motion to dismiss, or, in the alternative, for summary judgment, based upon the business judgment determination by the Special Committee is DENIED.

Parties shall complete all discovery by August 20, 1980. A trial date will be set soon thereafter.