Frank J. ABELLA, Jr., Plaintiff,

v.

UNIVERSAL LEAF TOBACCO CO.,
INC., et al., Defendants.

Civ. A. No. 79–0073–R.

United States District Court,
E. D. Virginia,
Richmond Division.

Sept. 7, 1982.

Alan E. Bandler, Kass, Goodkind, Wechsler & Labaton, New York City, G. Rodney Sager, Richmond, Va., for plaintiff.

Wm. C. Sterling, Jr., Wachtell, Lipton, Rosen & Katz, New York City, Frank B. Miller, III, Sands, Anderson & Miller, James C. Roberts, Mays, Valentine, Davenport & Moore, Richmond, Va., for defendants.

## MEMORANDUM

MERHIGE, District Judge.

The Court has previously denied a motion filed by the defendant Universal Leaf Tobacco Co., Inc. ("Universal") to dismiss the complaint herein, or, in the alternative, to grant it summary judgment. *See Abella v. Universal Leaf Tobacco Co.,* 495 F.Supp. 713 (E.D. Va. 1980) (*"Abella I"*). The Court granted Universal a certificate for interlocutory appeal, but the Court of Appeals for the Fourth Circuit denied Universal's motion for leave to appeal. Universal now renews its motion in light of developments in Delaware law since *Abella I,* as described *infra.* Additionally, the individual defendant directors of Universal ("the Directors") now move for summary judgment.

Since the facts surrounding this case were set out in some detail in *Abella I, supra,* a brief summary should suffice here. Plaintiff, a citizen of New Jersey, owns stock in Universal, a Virginia corporation. He brings this derivative action to recover from the Directors, none of whom are New Jersey citizens, approximately 1.2 million dollars Universal paid to Congoleum Corporation ("Congoleum") in exchange for Congoleum's abandoning its attempt to take over Universal. Additionally, the plaintiff seeks to recover Universal's expenses in fighting the takeover bid; to remove the Directors as directors, officers, and employees; and to have a receiver appointed to manage Universal until a new board of directors is installed. Plaintiff alleges that the Directors' actions violated their fiduciary duties to Universal under Virginia law and violated § 14(e) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(e) ("the 1934 Act").

Plaintiff invokes this Court's jurisdiction under § 27 of the 1934 Act, 15 U.S.C. § 78aa, under diversity jurisdiction provided in 28 U.S.C. § 1332, and under the

Court's pendent jurisdiction over state law claims.

## I. UNIVERSAL'S RENEWED MOTION TO DISMISS

### A. Special Litigation Committee

■ In *Abella I*, this Court rejected Universal's contention that the Court was bound by the determination of Universal's Special Litigation Committee (SLC) to the effect that the plaintiff's suit should be dismissed for the reason that the SLC had decided that maintaining the suit would not be in the best interests of Universal and its shareholders. Universal claimed that the SLC's decision was shielded from the Court's scrutiny by the business judgment rule. In finding no connection between the business judgment rule and the dismissal of a shareholder derivative suit, the Court was guided by *Maldonado v. Flynn*, 413 A.2d 1251 (Del. Ch. 1980). *See* 495 F.Supp. at 717.[1] *Maldonado* has since been reversed *sub nom. Zapata Corp. v. Maldonado*, 430 A.2d 779 (Del. 1981).

In light of this development, Universal has renewed its motion to dismiss the complaint, or, in the alternative, for summary judgment. In his response to the Directors' motion for summary judgment, discussed *infra*, plaintiff asserts without supporting authority that the defendants may not relitigate the denial of their prior motion. This claim is plaintiff's only apparent response to Universal's motion and, in the Court's view, is not well taken. The Court has discretion to allow Universal to renew its motion. *See generally* 6 J. Moore, *Moore's Federal Practice* ¶ 56.14[2] (2d ed. 1982).

The *Zapata* decision fully justifies the Court's reconsideration of the effect of a special litigation committee's determination that a shareholder derivative suit should be dismissed. The *Zapata* decision has, as one might have anticipated, provoked considerable commentary. *See, e.g.,* Block & Prussin, *The Business Judgment Rule and Shareholder Derivative Actions: Viva Zapata?*, 37 Bus. Law. 27 (1981); Note, Zapata Corp. v. Maldonado: *A Limitation on the Use of Delaware's Business Judgment Rule in Shareholder Derivative Suits*, 6 Del. J. Corp. L. 80 (1981); Comment, Zapata Corp. v. Maldonado: *Restricting the Power of Special Litigation Committees to Terminate Derivative Suits*, 68 Va. L. Rev. 1197 (1982) ("Comment, *Restricting the Power*"); Case Comment, *Directors' Business Judgment in Terminating Derivative Suits Subject to Judicial Review*, 59 Wash. U.L.Q. 1425 (1982). More importantly, *Zapata* has been recognized as authoritative by a number of courts. *See, e.g., Maldonado v. Flynn*, 671 F.2d 729 (2d Cir. 1982) (per curiam) (remanding *Maldonado v. Flynn*, 485 F.Supp. 274 (S.D.N.Y. 1980), so District Court might proceed to apply *Zapata* principles); *Zilker v. Klein*, 540 F.Supp. 1196, 1198 (N.D. Ill. 1982); *Stein v. Bailey*, 531 F.Supp. 684, 691 (S.D.N.Y. 1982) (Delaware law); *Watts v. Des Moines Register & Tribune*, 525 F.Supp. 1311, 1324–29 (S.D. Iowa 1981) (Iowa law); *cf. Joy v. North*, 519 F.Supp. 1312, 1317–19 (D. Conn. 1981) (Connecticut law; following *Zapata* as to some points but not adopting *Zapata* approach altogether).

In the original *Maldonado* case, which the Court relied upon in *Abella I*, an "Independent Investigation Committee" composed solely of two newly appointed directors recommended dismissal of a shareholder derivative suit alleging self-dealing on the part of the directors. The Court of Chancery refused to give weight to that recommendation, holding that "the business judgment

---

1. The Court also cited *Maher v. Zapata Corp.*, 490 F.Supp. 348 (S.D. Tex. 1980), a case related to the Delaware *Maldonado* case. *Maher* has since been settled and dismissed with prejudice, *Maher v. Zapata Corp.*, 490 F.Supp. 348 (S.D. Tex. 1980), *appeal docketed*, No. 81–2261 (5th Cir. July 21, 1981), as reported in yet another related case, *Maldonado v. Flynn*, 671 F.2d 729, 730 n. 1, 731 (2d Cir. 1982). While this Fifth Circuit appeal of the settlement may eventually provide some guidance as to the continued precedential value of the reported *Maher* decision, that decision must now be regarded as questionable, since it was construing Delaware law on a question that has since been decided to the contrary by the Delaware Supreme Court in the *Zapata* decision discussed at length *infra*.

rule is irrelevant to the question of whether the Committee has the authority to compel the dismissal of this suit." 413 A.2d at 1257. The court went on to find that the shareholder had an individual right to maintain the derivative action. *Id.* at 1262.

The Delaware Supreme Court began its analysis[2] by rejecting the latter proposition, finding instead that the shareholder had only a right to initiate the suit, not an absolute right to control it. 430 A.2d at 782–83. It then found that Delaware statutes giving the board its broad powers, including by implication the power to control corporate litigation and expressly the power to delegate its authority to a committee, conferred on the "independent committee composed of disinterested board members [the authority] to move to dismiss derivative litigation that is believed to be detrimental to the corporation's best interest." 430 A.2d at 786. The court, however, still declined to defer to the board and committee to the extent that the majority of courts that have considered the issue have done.[3] Instead, the court placed on the corporation the burden of proving the committee's independence, good faith, and reasonable investigation, rather than presuming those elements to be present. *Id.* at 788 & n. 17. Further, and most significant-

ly, the court directed the trial court to apply its own "independent business judgment" to decide whether to dismiss the suit, *id.* at 789, taking into account " 'many factors—ethical, commercial, promotional, public relations, employee relations, fiscal as well as legal,' " *id.* at 788 (quoting *Maldonado v. Flynn,* 485 F.Supp. at 285).

As in *Abella I, see* 495 F.Supp. at 716, this Court now assumes the role of a Virginia court and applies the relevant Virginia law. The Court must give due weight to *Zapata* and the line of cases following it and consider the extent to which a Virginia court would be likely to rule similarly.

The Code of Virginia contains provisions substantially the same as the Delaware provisions the *Zapata* court construed. Just as Del. Code Ann. tit. 8, § 141(a), *see Zapata,* 430 A.2d at 782 n. 6, entrusts the management of the business and affairs of a corporation to its board of directors, Va. Code § 13.1–35 uses the same operative language for the same purpose.[4] Similarly, Delaware allows the board of directors to delegate all of its authority to a committee of one or more directors in Del. Code Ann. tit. 8, § 141(c), *see Zapata,* 430 A.2d at 785 n. 13; Virginia allows such delegation to a committee of two or more directors pursuant to

---

**2.** Perhaps logically preliminary to the analysis described in text is the court's consideration of the difference between a suit where the shareholder demands that the board bring an action and a suit where such a demand is excused. *See* 430 A.2d at 784 & n. 10. The analysis described in text applies only to the latter sort of suit.

Both Universal and the Directors raised as an affirmative defense in their Answers a contention that the plaintiff should not be excused from the demand requirement in Fed. R. Civ. P. 23.1. However, none of the defendants have pressed this claim in their motions to dismiss or for summary judgment. For purposes of these motions, the Court will accept plaintiff's excuse that such a demand would have been futile, since a majority of the board took part in the transactions of which he complains. *See Watts v. Des Moines Register & Tribune,* 525 F.Supp. 1311, 1326–27 (S.D. Iowa 1981), and cases cited therein. Accordingly, the Court need not consider the appropriate treatment of a suit in which the shareholder does make a demand on the board that it bring an action.

**3.** *See, e.g., Lewis v. Anderson,* 615 F.2d 778 (9th Cir. 1979), *cert. denied,* 449 U.S. 869, 101 S.Ct. 206, 66 L.Ed.2d 89 (1980); *Abbey v. Control Data Corp.,* 603 F.2d 724 (8th Cir. 1979), *cert. denied,* 444 U.S. 1017, 100 S.Ct. 670, 62 L.Ed.2d 647 (1980); *Auerbach v. Bennett,* 47 N.Y.2d 619, 393 N.E.2d 994, 419 N.Y.S.2d 920 (1979). This line of cases is identified as being in the majority in *e.g.,* Comment, *Restricting the Power, supra,* 68 Va. L. Rev. at 1200–01.

**4.** Va. Code § 13.1–35 provides:

The business and affairs of a corporation shall be managed by a board of directors subject to any requirement of stockholder action made by this Act or the articles of incorporation. Directors need not be residents of this State or stockholders of the corporation unless the articles of incorporation so require. The articles of incorporation may prescribe qualifications for directors. The board of directors shall have authority to fix the compensation of directors unless otherwise provided in the articles of incorporation.

Va. Code § 13.1–40.[5] A comparison of the Delaware case law cited in *Zapata* and comparable Virginia case law reveals further similarities in the states' treatment of, for example, the power to initiate derivative suits [6] and the demand requirement.[7]

In addition to considering these factors pushing toward acceptance of the Delaware treatment, this Court must consider the significance of rejecting that treatment. As *Zapata* indicates, *see* 430 A.2d at 782, the Court of Chancery opinion, *Maldonado v. Flynn,* 413 A.2d 1251 (Del. Ch. 1980), together with *Maher v. Zapata Corp.,* 490 F.Supp. 348 (S.D. Tex. 1980), and *Abella I,* represented the "minority" rule on the treatment of determinations by special litigation committees. *See also Abella I,* 495 F.Supp. at 717. *Zapata* endeavored to find a middle course between the "minority" rule and the "majority" rule. *See* 430 A.2d at 787–88; note 3 *supra.* But since the Delaware Supreme Court reversed the Court of Chancery in *Zapata,* and *Maher,* which was construing Delaware law, has become a questionable precedent, *see* note 1 *supra,* the "minority" position is apparently now occupied only by *Abella I,* which has become a minority of one (I). To adhere to the holding of *Abella I* despite the teachings of *Zapata* would be to assert that

Virginia would impose the most restrictive rule in the nation concerning a corporation's power to terminate shareholder derivative suits. The Court simply finds no justification in Virginia law for such an assertion.

Most importantly, the Court finds the reasoning in the *Zapata* opinion persuasive. The Delaware Supreme Court showed its sensitivity to the danger of giving minority shareholders the power to embroil the corporation in ill-founded litigation pursuant to the minority rule, as well as the danger of allowing the board of directors to appoint a few "good ol' boys" as a special litigation committee and to be accordingly whitewashed pursuant to the majority rule. While the Court recognizes the limitations of its own expertise in applying its business judgment to the decision as to dismissal, it also recognizes the relative ease with which a committee could construct a record of apparently diligent investigation after having predetermined the outcome of the investigation. The Court is persuaded that the *Zapata* approach adequately safeguards the competing interests at stake and that Virginia has no need for, nor would it follow, a more restrictive approach. Accordingly, the Court will apply the *Zapata* approach in the instant case, with considerable guidance from a similar application in

---

**5.** Va. Code § 13.1–40 provides:

A. If the articles of incorporation or the bylaws so provide, the board of directors, by resolution adopted by a majority of the number of directors fixed by the bylaws, or in the absence of a bylaw fixing the number of directors, then of the number stated in the articles of incorporation, may designate two or more directors to constitute an executive committee, which, to the extent provided in such resolution or in the articles of incorporation or the bylaws of the corporation shall have and may exercise all of the authority of the board of directors except to approve an amendment of the articles of incorporation, a plan of merger or consolidation, a plan of exchange under which the corporation would be acquired, the sale, lease or exchange, or the mortgage or pledge for a consideration other than money, of all, or substantially all, the property and assets of the corporation otherwise than in the usual and regular course of its business, the voluntary dissolution of the corporation, or revocation of voluntary dissolution proceedings.

B. If the articles of incorporation, or the bylaws, so provide, other committees, consisting of two or more directors, may be designated by a resolution adopted by a majority of the directors present at a meeting at which a quorum is present.

Any such committee, to the extent provided in the articles of incorporation, the bylaws, or in the resolution of the board of directors, shall have and may exercise the powers and authority of the board of directors in the management of the business and affairs of the corporation, except as limited by subsection A of this section.

**6.** *Compare Sohland v. Baker,* 15 Del.Ch. 431, 141 A. 277, 281 (1927), *with Virginia Passenger & Power Co. v. Fisher,* 104 Va. 121, 126–27, 51 S.E. 198, 200 (1905).

**7.** *Compare McKee v. Rogers,* 18 Del.Ch. 81, 156 A. 191, 193 (1931), *with Koch v. Seventh Street Realty Corp.,* 205 Va. 65, 70–71, 135 S.E.2d 131, 134–35 (1964), *and Mount v. Radford Trust Co.,* 93 Va. 427, 430–31, 25 S.E. 244, 245 (1896).

*Watts v. Des Moines Register & Tribune,* 525 F.Supp. 1311, 1326–29 (S.D. Iowa 1981).[8]

■ First, Universal has the burden of proving the independence and good faith of the SLC and that it performed a reasonable investigation to provide reasonable bases for its conclusions. *See Zapata,* 430 A.2d at 788–89. The plaintiff has never seriously challenged Universal's claim to have satisfied these factors.[9] Nevertheless, Universal still must affirmatively establish that the factors are satisfied. The Court finds that it has done so.

### (1) *Independence.*[10]

■ The SLC is composed of Dr. Ronald E. Carrier, a professional economist and president of James Madison University, and Senator Elmon T. Gray, a member of the Virginia General Assembly and president of Gray Lumber Company. Neither was a board member during the period when Universal resisted the Congoleum takeover attempt. They have been paid $300 per meeting for their participation in the SLC; such fees have not been contingent upon the outcome of the SLC's deliberations.

Dr. Carrier's only contact with any board member prior to his appointment was with Wallace L. Chandler, executive vice president and director, who was a member of the Board of Visitors of James Madison University. Senator Gray had some prior casual social contact with Gordon L. Crenshaw,

president and chief executive officer of Universal.

· Since its inception, the SLC has repeatedly consulted with its independent counsel and discussed matters that might have, or appear to have, any bearing on its members' independence. The board delegated to the SLC full authority to determine Universal's action in regard to maintaining this suit, without any right of review by the full board. The Court concludes that Universal has demonstrated the SLC's independence and that no material issue of fact remains as to this question. *Cf. Watts v. Des Moines Register & Tribune,* 525 F.Supp. at 1327–28 (similar finding); *Abramowitz v. Posner,* 513 F.Supp. 120, 132–33 (S.D.N.Y. 1981) (finding a committee independent even though one member was a director during the period at issue), *aff'd,* 672 F.2d 1025 (2d Cir. 1982).

### (2) *Good Faith.*[11]

The facts put forth to demonstrate the SLC's good faith necessarily overlap those setting forth the basis for its determination. But the inquiry here is into the spirit and sincerity with which the investigation was conducted, rather than the reasonableness of its procedures or bases for conclusions.

■ The SLC engaged the law firm of Wharton, Aldhizer and Weaver of Harrisonburg, Virginia, and Dean William B. Spong,

**8.** The *Watts* court identified four prongs to the *Zapata* approach. *See* 525 F.Supp. at 1326. This Court has effectively already considered the first two prongs. For purposes of these motions, the Court considers the demand requirement excused, *see* note 2 *supra,* so the derivative suit has been properly initiated. In note 5 *supra,* the Court set out the text of Va. Code § 13.1–40, which allows the delegation of the board's authority to an independent committee. The Court now considers the final two prongs, which the *Zapata* court set out in 430 A.2d at 788–89.

**9.** In Plaintiff's Memorandum of Law in Opposition to the Motion to Dismiss or for Summary Judgment, at 6, submitted in regard to the motion that was the subject of *Abella I,* the plaintiff referred to the SLC as "a special committee made up of directors nominated and appointed to Universal's board by the defend-

ant directors . . . . Having thus appointed their own prosecutor, judge and jury, the result is hardly unexpected." This broad assertion is essentially the same as the claim of "structural bias" found ineffectual in *Watts,* 525 F.Supp. at 1329–30. The plaintiff has submitted no evidence to establish any undue influence the board exerted over the SLC.

**10.** Facts set out in this section are collected from the Affidavit of Ronald E. Carrier and Elmon T. Gray in Support of Motion to Dismiss ¶¶ 2, 3 ("Carrier and Gray Affidavit"), and the Report and Determination of the Special Litigation Committee of the Board of Directors 5–9, app. (Mar. 20, 1980) ("SLC Report").

**11.** Facts set out in this section are collected from Carrier and Gray Affidavit ¶ 4, and SLC Report 9–12, app.

Jr., of the Marshall-Wythe School of Law of the College of William and Mary as counsel to assist in reviewing materials and to advise the SLC. The counsel for the SLC gathered and reviewed documents, conducted interviews, and prepared 160 investigative reports and seven memoranda.

The SLC's expressed intention was to place itself in the position Universal occupied during the dealings with Congoleum and to "second-guess" the decisions the Directors made. The SLC met 10 times to consider and discuss the materials submitted by counsel. The minutes of the SLC meetings reveal diligent effort, as well as continual resolve to conduct an impartial, objective investigation; there is no indication that the investigation was a sham, a charade. Indeed, the record fully supports the Court's conclusion that Universal has demonstrated the good faith of the SLC's investigation and that no material issue of fact remains as to this question.

(3) *Reasonable Basis.*[12]

■ The previous section describes the procedures the SLC and its counsel followed. The SLC Report further describes documents, interviews, and analyses involved in the investigation. The SLC Report reveals an exhaustive reconstruction of Universal's dealings with Congoleum and so provides the factual basis for the SLC's effort to "second-guess" the board's decisions.

While the SLC does not expressly set forth its reasoning, it apparently proceeded on the theory that if the Directors' decisions appeared correct to the SLC, they would similarly appear correct to a trier of fact if the action were to be maintained. Since the plaintiff was alleging corporate waste on the part of the Directors, rather than, say, self-dealing, the SLC's investigation into the propriety and wisdom of the Directors' decisions amounted to an investigation of the merits of plaintiff's allegations.

The scope and methodology of the investigation appear reasonably calculated to lead to a reasonable determination as to whether pursuing the plaintiff's action would be in the best interests of Universal and its shareholders. In addition to evaluating the merits of plaintiff's action, the SLC considered the relative costs and benefits of maintaining the action.[13] The SLC Report contains ample factual substantiation for the SLC's conclusions. *Cf. Watts v. Des Moines Register & Tribune,* 525 F.Supp. at 1328–29 (inadequate information on the record for court to evaluate reasonableness of bases). The Court concludes that Universal has demonstrated the reasonableness of the investigation and of the bases for the SLC's conclusions, and that no material issue of fact remains as to this question.

Accordingly, the Court finds that Universal has carried its burden of proof and satisfied the "first step" of the *Zapata* test, *see* 430 A.2d at 788–89. The Court now proceeds to the "second step" and applies its "own independent business judgment" to determine whether the SLC correctly concluded that the action should be dismissed. *See id.*

Since the Court today grants the Directors' motion for summary judgment, *see infra,* one might reasonably, though impermissibly, infer that the Court, *solely* on that basis, agrees with the SLC's conclusion that plaintiff's claim lacks merit. Such an inference is not, however, permissible from the

---

**12.** Facts set out in this section are collected from Carrier and Gray Affidavit ¶ 4, and SLC Report *passim.*

**13.** The SLC concluded:

The benefit to be derived from a successful decision on the merits is more than outweighed by the costs to the Corporation, including the following:

(a) Large attorneys' fees and expenses;

(b) Loss of management time and energies;

(c) Disruption of management, employees and overall reduction in morale;

(d) The removal of the defendant directors from office and the appointment of a receiver would be a devastating blow to the Corporation, its employees and stockholders;

(e) Possible adverse consequences relating to the Company's insurance coverage;

(f) Adverse customer, banker and stock market reaction.

SLC Report 45–46.

mere act of granting summary judgment; that act follows from an adjudication only that plaintiff has not put forth evidence to support his claim. In some instances a derivative plaintiff just lacks the resources, determination, or information necessary in order to prosecute a meritorious claim on behalf of the corporation. In such instances, it might be in the best interests of the corporation and its shareholders for a special litigation committee to decide not only that the corporation should not move to dismiss the action, but that the corporation should lend its (probably superior) resources to the prosecution of the action. In the instant case, the plaintiff has been far from vigorous in prosecuting the action. As the defendants are quick to point out,[14] the plaintiff has conducted only one deposition, that being a two-hour deposition of one of Universal's lawyers.

■ As it happens, however, the Court does agree with the SLC that the plaintiff's claim, even if vigorously prosecuted, would be without merit. The Directors' actions in resisting the Congoleum takeover attempt, far from being waste, appear to have been to the benefit of Universal. The reasons the Directors gave for thinking that the proposed takeover would be detrimental to Universal and that the settlement was favorable employ legitimate concerns for a business,[15] and the defendants have submitted substantial evidence to show that the Directors' fears were well-founded.[16] Moreover, the Directors have submitted evidence to refute the plaintiff's contention that their ulterior motive in resisting the Congoleum takeover attempt was to perpetuate themselves in office; the evidence shows that Congoleum intended to retain the management of Universal.[17]

In summary, the Court is convinced that the Directors would prevail in a suit based on plaintiff's allegations, whether prosecuted by Abella or Universal. Even if they were not to prevail on the basis of the business judgment rule, as discussed *infra,* they would, in the Court's opinion, prevail on the merits of their decisions. The Court's exercise of its independent business judgment is not to be interpreted as an invasion of the right of trained business personnel to exercise their best business judgment. Indeed, the Court's exercise of its independent business judgment in the instant case involves only the sort of matter in which, not immodestly, the Court has a fair degree of expertise; it has only to conclude, as it does, that a suit against the Directors was destined to fail. The Court having so concluded, it follows that the SLC was correct in its determination that dismissing the action would be in the best interests of Universal and its shareholders, and the Court concludes that no material issue of fact remains as to this question.

B. *Section 14(e) Claim*

Universal and the Directors both oppose the plaintiff's claims under § 14(e) of the 1934 Act on the same purely legal grounds. Accordingly, both motions will be treated as motions to dismiss, and the two motions will be considered together.

The defendants base their motions to dismiss on *Panter v. Marshall Field & Co.,* 646 F.2d 271 (7th Cir.), *cert. denied,* 454 U.S. 1092, 102 S.Ct. 658, 70 L.Ed.2d 631 (1981), and *Lewis v. McGraw,* 619 F.2d 192 (2d

---

14. *See* Defendant Universal's Memorandum of Law in Support of its Renewed Motion to Dismiss the Complaint, at 4–5; Memorandum in Support of Individual Defendants' Motion for Summary Judgment, at 4.

15. Briefly stated, the reasons were: (a) Congoleum's offering price was inadequate; (b) the offer was disrupting vital goodwill with customers; (c) Congoleum could not afford to finance the transaction without taking out crippling loans; (d) Congoleum intended to squeeze out the majority of Universal shareholders; and (e) the great majority of share-

holders and Universal's professional advisors concurred in the Directors' decisions. *See* Joint Affidavit of Universal Directors in Support of Motion for Summary Judgment ¶ 4; Affidavit of Gordon L. Crenshaw in Support of Motion for Summary Judgment ¶¶ 13–33 ("Crenshaw Affidavit").

16. *See* SLC Report *passim;* Crenshaw Affidavit Exhibits E–Q.

17. *See* Crenshaw Affidavit Exhibit D.

Cir.), *cert. denied,* 449 U.S. 951, 101 S.Ct. 354, 66 L.Ed.2d 214 (1980). These cases held that shareholders had no cause of action under § 14(e) where a tender offer had not been made, because the shareholders could not have relied upon any statements for purposes of deciding whether to tender.

The plaintiff correctly points out that those two cases involved shareholder class actions and so are inapposite to consideration of a derivative suit. The appropriate question, in the Court's view, is whether a target corporation may assert a cause of action against its own board of directors for alleged misconduct in connection with a tender offer. Because they rest so directly on their particular facts, decisions that consider the availability of a cause of action between other actors in the tender offer setting unfortunately provide little guidance. *See also Piper v. Chris-Craft Industries, Inc.,* 430 U.S. 1, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977) (unsuccessful offeror suing target); *Wellman v. Dickinson,* 475 F.Supp. 783 (S.D.N.Y. 1979) (target suing offeror), *aff'd,* [Current] Fed. Sec. L. Rep. (CCH) ¶ 98,731 (2d Cir. 1982).

The court in *Bolton v. Gramlich,* 540 F.Supp. 822, 834–35 (S.D.N.Y. 1982), recently held that shareholders can bring a derivative claim under § 14(e) on behalf of the target corporation against its board of directors based on the board's action in regard to a tender offer. *See also Smallwood v. Pearl Brewing Co.,* 489 F.2d 579, 596 (5th Cir.) ("[A] nontendering shareholder may complain derivatively [under § 14(e) ] of injury to the target company."), *cert. denied,* 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 113 (1974); *Fabrikant v. Jacobellis,* [1969–1970 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 92,686 (E.D.N.Y. 1970). The Court concludes that Abella has standing to bring the instant action despite the absence of an actual offer. Such conclusion, however, is not an answer to the ultimate issue.

■ The *Bolton* decision is further on point in providing a different basis for dismissing the plaintiff's § 14(e) claim. There the court found no "evidence of legislative intent to create a private right of action for issuers harmed by breaches of fiduciary duty of the kind presented here." 540 F.Supp. at 836; *accord, In re Sunshine Mining Co. Securities Litigation,* 496 F.Supp. 9, 11 (S.D.N.Y. 1979) (dismissing "plaintiff's claim that approval of the tender offer was withheld by management for purely selfish reasons [, which] amounts to no more than a charge that [target] management acted unfairly and in breach of its fiduciary duties"); *cf. Lewis v. McGraw,* 495 F.Supp. 27, 31–32 (S.D.N.Y. 1979) (plaintiffs alleged nondisclosure and misleading disclosure *in addition to* breach of fiduciary duty, so *Sunshine Mining* did not require dismissal on that ground), *aff'd,* 619 F.2d 192, 195 (2d Cir.) (plaintiffs can bring claims for breach of fiduciary duty in state court), *cert. denied,* 449 U.S. 951, 101 S.Ct. 354, 66 L.Ed.2d 214 (1980). The purpose of the 1934 Act is to ensure full and fair disclosure, not the fairness of any transaction. *See Santa Fe Industries, Inc. v. Green,* 430 U.S. 462, 478, 97 S.Ct. 1292, 1303, 51 L.Ed.2d 480 (1977).

■ A claim of breach of fiduciary duty does not lie under § 14(e). Thus, the Court need not consider whether Virginia law allowing a special litigation committee to dismiss derivative actions under the *Zapata* conditions is inconsistent with § 14(e) for purposes of *Burks v. Lasker,* 441 U.S. 471, 99 S.Ct. 1831, 60 L.Ed.2d 404 (1979).

## II. THE DIRECTORS' MOTION FOR SUMMARY JUDGMENT

The Directors contend their actions in opposing the Congoleum takeover attempt amounted to a good faith exercise of their business judgment; they contend that the Court therefore should not inquire into the merits of the actions, but only into whether the actions were taken in good faith. The plaintiff evidently concedes that contention, but asserts that the Court is faced with serious questions of fact concerning the Directors' good faith and motivation. The parties are correct in their tacit assumption that Virginia's acceptance of the business judgment rule, which would effectively limit the issue in the instant case to whether the plaintiff can show gross mismanage-

ment or bad faith, is beyond doubt. *See, e.g., Abella I,* 495 F.Supp. at 716–17; *Penn v. Pemberton & Penn, Inc.,* 189 Va. 649, 660, 53 S.E.2d 823, 829 (1949); *Kaplan v. Block,* 183 Va. 327, 31 S.E.2d 893 (1944); *Roanoke Cemetery Co. v. Goodwin,* 101 Va. 605, 611, 44 S.E. 769, 771 (1903).

As previously noted, the plaintiff asserts that there are genuine issues of fact concerning the good faith and motivation of the Directors. But the only factual question the plaintiff specifies is whether the payment to Congoleum was in settlement of "unasserted counterclaims," as he contends the settlement agreement stated. There can be no question about what the agreement states. In the fourth of eight paragraphs beginning with "WHEREAS," the agreement recites: "WHEREAS, Congoleum has asserted but not filed a counterclaim in Case Number 76–0474–R seeking damages resulting from alleged violations of federal and state laws." [18] The plaintiff asserts that the defendants have denied, in (unspecified) documents filed in this litigation, that the payment was in settlement of unasserted counterclaims.

The Court finds that the question of the status or even existence of Congoleum counterclaims, asserted or not, is immaterial. The evidence submitted by the Directors clearly establishes that the prime motivation for the payment to Congoleum was to induce Congoleum to withdraw its tender offer. Rule 56 allows the Court to grant summary judgment if "there is no genuine issue as to any material fact." Whether or not the issue is genuine, the fact plaintiff specifies is not material.

The Directors have submitted extensive affidavits and exhibits to demonstrate the good faith of their actions. They have provided reasonable grounds for their decisions.[19] The basic facts cannot be in dispute, since the plaintiff has not submitted any evidence at all, let alone any contradicting Directors' evidence. The Court finds that the inferences therefrom—that the Directors acted in good faith and out of a

motivation to benefit Universal—are not subject to reasonable dispute.

The plaintiff falls squarely within Rule 56(e), which provides in pertinent part:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue at trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Plaintiff has merely made bald assertions that some genuine issue exists. He has utterly failed, however, to direct the Court to them, nor has the Court, in its own search, been led to any. Therefore, summary judgment is appropriate. *See, e.g., Brown v. Cameron-Brown Co.,* 652 F.2d 375, 379 (4th Cir. 1981); *Berry v. Atlantic Coast Line R.R.,* 273 F.2d 572, 582 (4th Cir.), *cert. denied,* 362 U.S. 976, 80 S.Ct. 1058, 4 L.Ed.2d 1009 (1960).

### III. SUMMARY

The Court acknowledges that the basis for its holding in *Abella I* is no longer valid; rather, Virginia law favors following the *Zapata* approach to considering the determination by a special litigation committee. The Court is convinced that the SLC in the instant case was independent, acted in good faith, and had a reasonable basis for its determination, and the Court's own business judgment is that the SLC's determination to dismiss the derivative action was correct. The Court will grant Universal's motion for summary judgment.

The plaintiff's allegation of breach of fiduciary duty does not state a claim under § 14(e) of the 1934 Act. The Court will grant the defendants' motions to dismiss Count I of plaintiff's complaint.

There is no genuine issue of material fact as to the good faith of the Directors in

---

**18.** *See* Crenshaw Affidavit Exhibit C.

**19.** *See* note 15 *supra.*

exercising their business judgment with regard to resisting the takeover attempt and settling with Congoleum. The Court will grant the Directors' motion for summary judgment as to Count II of plaintiff's complaint.

An appropriate order shall issue.